IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30509
_____

BILLY SINCLAIR,

Plaintiff-Appellant,

versus

PAUL FONTENOT, ET AL.,

Defendants,

PAUL FONTENOT,

Defendant-Appellee.

_____

Appeal from the United States District Court for
the Middle District of Louisiana
(D.C. No. 95-CV-304-C)
_____

May 18, 2000

Before REAVLEY, SMITH and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Billy Sinclair appeals the judgment in favor of Paul Fontenot, individually and in his official capacity as Superintendent of the Louisiana Department of Public Safety. The district court granted Fontenot's motion to dismiss pursuant to Rule 12(b)(6). We reverse and remand.

Sinclair has been incarcerated in Louisiana since his conviction and death sentence

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for murder in 1966. Sinclair's death sentence was converted to a sentence of life in prison following the Supreme Court decision in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972) ruling the application of the death penalty unconstitutional. In 1992, Louisiana Governor Buddy Roemer commuted Sinclair's sentence to a maximum of ninety years.

In 1986 Sinclair cooperated with a federal investigation into pardons for sale in the Louisiana prison system. Federal Marshals removed Sinclair from the prison system as a protected witness because his exposure of corruption within the prison system rendered his life in danger. Sinclair was transferred to the State Police Barracks where he remained in custody until the events giving rise to this lawsuit in November, 1994.

Sinclair's claim of retaliation in this lawsuit has its origins in his efforts to obtain release on parole. Following the commutation of sentence by Governor Roemer, Sinclair sought consideration for parole. The parole board refused to grant a hearing. After two years of litigation, Sinclair obtained a court order compelling a parole hearing, which took place in July of 1994. Parole was denied and Sinclair brought a habeas suit in Louisiana state court challenging the denial of his parole. The claim remaining in this lawsuit alleges that Fontenot ordered Sinclair transferred from the Barracks in retaliation for Sinclair's maintenance of this state court habeas lawsuit.

**PROCEDURAL HISTORY**

Sinclair, proceeding pro se, filed this lawsuit on March 13, 1995 against Fontenot, Richard Stalder, and Fred Kennedy, in their personal and official capacities, alleging that Sinclair's November, 1994 transfer to the Louisiana prison system from the Barracks was unlawful and that Sinclair was subjected to unconstitutional punishment after his transfer. Sinclair sought damages, an injunction, and declaratory relief.

The defendants moved to dismiss the complaint under Rule 12(b)(6). In his

2

objections to the magistrate judge's recommendation, Sinclair alleged for the first time that Fontenot transferred Sinclair in retaliation for Sinclair's state court habeas lawsuit. The district court granted the motion to dismiss and Sinclair appealed to this court. This court affirmed in part, vacated in part, and remanded, holding that the district court abused its discretion in failing to treat the objection to the magistrate judge's report as a request for leave to amend the complaint. We stated:

> The order dismissing Sinclair's claim that Fontenot retaliated against him for exercising his right of access to the court is VACATED and the case is REMANDED to the district court for further consideration of this claim.

On remand Sinclair requested leave to amend and filed a proposed 23-page complaint against Kennedy, Stalder and Fontenot alleging several theories of retaliation and other claims.

The magistrate judge declined to rule on Sinclair's request for leave to amend until after Fontenot filed a second 12(b)(6) motion to dismiss. On March 15, 1999, the magistrate judge recommended dismissal, quoting from Sinclair's proposed amended complaint to demonstrate that Sinclair alleged several motivations of the several defendants, holding as a result that Sinclair failed to allege that retaliation for his habeas suit constituted the but-for motivation of his transfer. On the same day the magistrate judge ruled on Sinclair's request for leave to amend, stating:

> this Court concludes that the mandate of the Fifth Circuit limits the plaintiff's claim herein solely to a claim of retaliation against him in response to the plaintiff's "suit challenging the denial of his parole. ... The appellate court vacated the Judgment of the district court only with respect to "this claim" against defendant Fontenot and affirmed in all other respects the lower court's ruling, including the dismissal of the remaining defendants and dismissal of all claims for retaliation except the claim against defendant Fontenot "for filing suit a suit challenging the denial of his parole". Accordingly, the dismissal of the plaintiff's claims against defendants Stalder and Kennedy is now final as is the dismissal of all claims against Fontenot except for the above-stated claim of retaliation.

3

The district court granted Fontenot's motion to dismiss under rule 12(b)(6) and this appeal ensued.

**LEAVE TO AMEND**

The magistrate judge correctly interpreted our prior remand to restrict the case to the claim against Fontenot alleging retaliation for Sinclair's state habeas lawsuit challenging denial of parole. It is understandable that Sinclair, proceeding pro se in a relatively complex constitutional claim, misunderstood our prior remand to permit him to seek leave to amend more broadly; however, the magistrate judge's report on the motion to dismiss improperly penalized Sinclair by using his additional claims for relief to justify dismissal. The allegations cited by the magistrate judge to justify the dismissal were additional grounds for which leave to amend was not granted and therefore were not properly before the court. Where leave to amend is only partially granted, only that portion of the complaint for which leave to amend has been granted should be used to determine a motion to dismiss under rule 12(b)(6).

**FAILURE TO STATE A CLAIM**

"To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). This but-for requirement is satisfied by alleging a "chronology of events from which retaliation may be plausibly inferred." Id. Sinclair's proposed amended complaint alleges that on two occasions Barracks Warden Fred Kennedy suggested that Sinclair drop his habeas action because Fontenot would order Sinclair transferred from the barracks "if the pressure gets too hot." Sinclair alleges that one of these warnings took place in the presence of Classification Officer Riis Suire. Sinclair

4

further alleges:

> 72. Plaintiff's right of access to the courts, to have false information removed from the parole board files, and to expose wrongdoing in the prison system through the news media are protected by the First Amendment to the United States Constitution. Defendants Stalder and Fontenot violated plaintiff's First Amendment rights with the November 30, 1994 transfer from the Barracks.

The same day that Sinclair attended a hearing on his habeas action, Fontenot ordered him transferred from the Barracks. Fontenot claimed to justify the transfer based upon observing Sinclair embrace his wife at her automobile after the hearing. However, Sinclair alleges that his conduct did not violate any rule of the Barracks and that several officials opposing the transfer informed Fontenot that Sinclair's conduct was not improper. The allegations that Sinclair complied with Barracks rules and Sinclair's support from Barrack's officers suggest that Fontenot's proffered reason for ordering the transfer may have been a pretext. The allegations that Kennedy warned Sinclair that Fontenot would order Sinclair transferred if he did not drop the habeas lawsuit are direct allegations of retaliatory motive. These allegations are more than sufficient to establish a "chronology of events from which retaliation may be plausibly inferred."[1] The allegations in Sinclair's amended complaint are sufficient to allege that Fontenot retaliated against Sinclair for Sinclair's exercise of his constitutionally protected right of access to the courts and the district court erred in dismissing Sinclair's complaint for failure to state a claim for which relief can be granted.

---

[1] In his objection to the magistrate judge's report, Sinclair further alleged that, subsequent to his request for leave to amend, his wife had several conversations with Kennedy and Suire in which they "both implied in fairly direct terms that the lawsuit was the motivation for the transfer." In adopting the magistrate judge's report, the district judge did not acknowledge Sinclair's request to amend his complaint to include these additional allegations. These allegations obviously strengthen Sinclair's complaint. However, even without the additional allegations, Sinclair has pleaded sufficient facts to withstand dismissal under 12(b)(6).

**QUALIFIED IMMUNITY**

Fontenot urges the court to affirm the dismissal on the grounds of qualified immunity, raised in the 12(b)(6) motion but not addressed by the magistrate judge's report. Fontenot argues that Sinclair's right of access to the court was not clearly established, entitling Fontenot to qualified immunity for a claim of retaliation. Qualified immunity only protects state officials from liability for damages. Even if the grounds for qualified immunity were established in this case, Sinclair's complaint seeks declaratory and injunctive relief for a transfer back to the Barracks. Qualified immunity does not extend to suits for injunctive or declaratory relief under § 1983. Chrissy F. By Medley v. Mississippi Dept. of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991). Sinclair alleges that, because of his prior cooperation with investigations of corruption and pardons for sale within the Louisiana prison system, his transfer from the Barracks places his life in danger, which no doubt renders his claim for injunctive relief of primary importance to his case.[2]

Sinclair states a claim for damages in addition to his claims for injunctive and declaratory relief; therefore we must determine whether qualified immunity protects Fontenot from this claim. We do not agree that Sinclair's right of access to the court was not clearly established at the time of the transfer. Fontenot cites Johnson v. Rodriguez, 110 F.3d 299, 310-11 (5th Cir. 1997) for the proposition that a prisoner's right of access to the courts is not unlimited, but encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of

---

[2] We note that, for purposes of injunctive relief, the threat of being murdered while in prison weighs the balance of hardships in Sinclair's favor when compared to the possible inconvenience of permitting him to remain in the Barracks.

6

confinement." (Quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996)).[3]  Fontenot argues that a habeas action challenging the denial of parole is not a challenge to a conviction or condition of confinement and therefore is not within the ambit of protected access to the court.  We disagree because duration is one of the most important conditions of a prisoner's confinement.

<u>Casey</u> distinguished a prisoner's ability to "attack their sentences, directly or collaterally, and ... challenge the conditions of their confinement" from "other litigating capacity" such as "shareholder derivative actions to slip-and-fall claims" which may be constitutionally impaired as an incidental consequence of incarceration. 518 U.S. at 355. This court has recognized that because a habeas challenge to the duration of confinement involves the prisoner's liberty, such suits are more akin to attacks on confinement than to § 1983 suits concerning conditions of confinement and therefore are not subject to the PLRA filing fee. <u>Davis v. Fechtel</u>, 150 F.3d 486, 490 (5th Cir. 1998).  Given the priority afforded to the prisoner's liberty interest, we hold that Sinclair's challenge to the denial of parole is within the ambit of challenges to conviction or condition of confinement for which access to the court is constitutionally protected, and does not constitute "other litigating capacity" to which the right of access may be impaired. <u>Casey</u>, 518 U.S. at 355.

This does not end our inquiry, because this protection only extends to nonfrivolous litigation.[4]  Sinclair's state habeas lawsuit challenged the denial of parole on the basis that

---

[3] Although Fontenot's decision to transfer Sinclair took place in 1994, Fontenot asserts the subsequent decisions in <u>Casey</u> or <u>Johnson</u> as authority that Sinclair's right of access was not clearly established at the time of the alleged retaliation.  Such argument is contrary to our 1995 opinion in <u>Woods</u> where we held that "[t]he law of this circuit is clearly established, and was so in 1990 ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts." 60 F.3d at 1164.

[4] It is for the court hearing a lawsuit to determine whether or not litigation is frivolous.  It is important to note that the alleged retaliation occurred during the pendency of the state habeas lawsuit and Fontenot is not constitutionally permitted to retaliate against Sinclair on the basis of

7

he met all the substantive criteria for rehabilitation under the Louisiana parole statute, that the denial of parole itself constituted unlawful retaliation for his successful suit to obtain a parole hearing, and that the denial was based upon false information contained in Sinclair's records. Sinclair v. Kennedy, 701 So. 2d 457, 458 (La. App. 1997). Sinclair sought an order for release on parole and alternatively a new parole hearing. Id.[5] The Louisiana Court of Appeals considered Sinclair's habeas suit challenging denial of parole and ultimately determined that the statute did not afford judicial review of the procedure or results of the parole board hearing. Sinclair, 701 So.2d at 462. Sinclair's failure to prevail on the merits of the habeas suit does not render it frivolous and the suit presented substantial grounds for judicial consideration. We hold that Sinclair's habeas suit was nonfrivolous and we reject Fontenot's claim that he was permitted to engage in retaliation against Sinclair for pursuing the habeas action.

We reverse the dismissal and remand to the district court so that Sinclair may proceed with discovery.

REVERSED AND REMANDED

---

Fontenot's own belief about the merits of the lawsuit.

Sinclair obtained another parole hearing in 1999 on the basis that his prior hearing had considered records containing erroneous information. Chris Frink, *Board grants Billy Wayne Sinclair new parole hearing*, Baton Rouge Advocate, January 22, 1999, at B3. Online at Baton Rouge Advocate Online, **<http://www.theadvocate.com/archive/story.asp**?storyid=14511>.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part,

The majority rejects Fontenot's claim of qualified immunity because, in its view: (1) the constitutional right to file a state habeas petition challenging the denial of parole was "clearly established" in 1994 and (2) despite the fact that Louisiana state law expressly precludes judicial review of parole decisions, Sinclair's state habeas petition challenging the denial of parole was not frivolous. I disagree with both propositions. Accordingly, I dissent in part.[6]

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Hare v. City of Corinth*, 135 F.2d 320, 325 (5th Cir. 1998). Under the umbrella of qualified immunity, Fontenot is protected from a suit for damages unless the law giving Sinclair a constitutional right to file a lawsuit challenging the denial of parole was "clearly established" such as to alert him that his actions violated Sinclair's constitutional rights. Accordingly, as the majority notes, we must examine whether the right to file a suit challenging the denial of parole was a "clearly established" constitutional right when Fontenot allegedly violated it in 1994. *See Shipp v. McMahon*, 199 F.3d 256, 262 (5th Cir. 2000) ("[T]he face of plaintiff's pleadings must articulate a clearly established right at the time of the alleged violation.").[7]

---

[6]    I agree with the majority that the district court erred in dismissing Sinclair's claim under Rule 12(b)(6) and that the court unfairly penalized Sinclair for arguing issues outside our earlier remand order. I also agree with the majority that, to the extent Sinclair sought injunctive relief as opposed to monetary damages, qualified immunity does not protect Fontenot. *See Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995) ("Neither absolute nor qualified immunity extends to suits for injunctive or declaratory relief under §1983.") (citing *Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir.1991)).

[7]    As only pre-1994 law is relevant to this determination, we must analyze the "clearly established" question as if the Supreme Court's subsequent decision in *Lewis v. Casey*, 518 U.S. 343, 356, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), and our decision in *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997), did not exist. The majority, while on one hand recognizing that

The "clearly established" threshold is not easily satisfied.  As we have previously stated, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent."  *Pierce v. Smith*, 117 F.3d 866, 992 (5th Cir. 1997); *see also Shipp*, 199 F.3d at 262 ("[T]he right is clearly established if based on pre-existing law, the unlawfulness of the conduct in question is apparent.").  In this inquiry, "[t]he Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; [rather,] our precedent places that burden upon plaintiffs."  *Sorenson v. Ferrie*, 134 F.3d 325, 330 n.10 (5th Cir. 1998) (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

If Sinclair had a constitutional right to file a state habeas petition challenging the denial of parole, it would arise from his First Amendment right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).  In *Bounds*, the Supreme Court held that prisoners have a constitutional right of access to the courts which "requires prison authorities to assist inmates in the preparation and filing of *meaningful legal papers* by providing prisoners with adequate law libraries or adequate assistance from people trained in the law."  *Id.* at 828, 97 S. Ct. 1491 (emphasis added). However, *Bounds* by no means delineated the scope of prisoner's right of access to the courts, and the "meaningful legal papers" restriction made clear that this right was not unlimited.  This point is crystallized by Justice Powell's concurring opinion, which described that: "The decision today recognizes that a prison inmate has a constitutional

---

qualified immunity is only sacrificed if Sinclair's right to file this suit was clearly established in 1994, on the other hand uses post-1994 caselaw to reject Fontenot's qualified immunity arguments.  As our cases make clear, this is inappropriate.  *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

right of access to the courts to assert such procedural and substantive rights as may be available to him under state and federal law." *Id.* at 832, 97 S. Ct. 1491 (Powell, J., concurring).

As described in the majority opinion, cases subsequent to Fontenot's actions have clarified the scope of prisoners' constitutional right of access to the courts.[8] However, neither Sinclair nor the majority cites any relevant authority preceding Fontenot's actions which supports their claim that the right to file suit challenging the denial of parole was "clearly established" at the time Fontenot allegedly violated it. As the burden to prove the existence of this clearly established right at that time is on Sinclair, *see Sorenson*, 134 F.3d at 330, and Sinclair provides nothing indicating that the right existed at that time, Sinclair has failed to satisfy his burden. Accordingly, qualified immunity should protect Fontenot here.

Furthermore, even assuming that the procedural right to file suit challenging the denial of parole was clearly established in 1994, Fontenot should be protected by qualified immunity because Sinclair's lawsuit was clearly frivolous. Louisiana state law expressly makes decisions of the parole board unreviewable. *See* LA. REV. STAT. ANN. 15:574.11.A ("Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the discretion of the Board of Parole. *No prisoner or parolee shall have a*

---

[8] As the majority opinion notes, cases subsequent to *Bounds* establish a distinction between those suits challenging "convictions or the conditions of confinement," which are encompassed in the right of access to the courts, and "secondary litigation activity," which is not. *See Casey*, 518 U.S. at 355, 116 S. Ct. 2174; *Johnson*, 110 F.3d at 311. However, as described above, the majority errs in considering *Casey* and *Johnson*, which cannot be used to evaluate what was "clearly established" law in 1994 as they had yet to be decided. Even if they were relevant, furthermore, I would disagree with the majority's conclusion. It is simply unclear whether suits challenging the denial of parole are within the category of protected lawsuits, especially in a state (such as Louisiana) where such suits are precluded by state law.

*right of appeal from a decision of the board regarding release.*") (emphasis added). Thus, unless this statute is unconstitutional (and Sinclair does not argue that it is), any challenge to the denial of parole, by state habeas petition or otherwise, would be summarily rejected.

As the majority notes, the Louisiana Court of Appeals considered Sinclair's state habeas petition and held that it lacked jurisdiction to consider the petition because judicial review of parole board decisions was precluded by statute. *See Sinclair v. Kennedy*, 701 So. 2d 457, 458 (La. Ct. App. 1997). The majority opines that "Sinclair's failure to prevail on the merits of the habeas suit does not render it frivolous and the suit presented substantial grounds for judicial consideration." However, regardless of whether Sinclair's underlying claims had merit, the suit he filed was frivolous because the court in which he filed the suit was precluded by state law from considering them. *See* LA. REV. STAT. ANN. 15:574.11.A ("No prisoner or parolee shall have a right of appeal from a decision of the board regarding release."); *Sinclair*, 701 So. 2d at 459 ("[N]o prisoner has the right to appeal a decision of the parole board regarding the granting or denial of parole."). The fact that the state habeas court did not reach the merits of Sinclair's claims because it was barred from considering them in and of itself establishes the frivolity of the lawsuit.

Accordingly, as the procedural constitutional right to file suit challenging a parole board decision was not clearly established in 1994, and as Sinclair's suit was frivolous even if this procedural right existed, I believe Fontenot was entitled to qualified immunity. I dissent in part.

12