Claude E. WOODS, Plaintiff–Appellee,
Cross–Appellant,

v.

Larry SMITH, et al., Defendants–
Appellants, Cross–Appellees.

No. 94–30040.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1995.

**28.** —— U.S. ——, ——, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994).

**29.** *Sugrue v. Derwinski,* 26 F.3d 8, 12–13 (2d Cir.1994).

**30.** *Id.* at 12.

André Charles Castaing, Asst. Atty. Gen., Richard P. Ieyoub, Atty. Gen., *Louisiana* Dept. of Justice, Litigation Div., Baton Rouge, LA, for appellant.

Prof. Henry D. Gabriel, (Court-appointed), Loyola Law School, New Orleans, LA, for appellee.

Before POLITZ, Chief Judge, HIGGINBOTHAM and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

On appeal is the partial grant of summary judgment in the civil rights action by Claude E. Woods, an inmate at the Louisiana State Penitentiary at Angola, against various corrections officials. Two officers appeal the denial of summary judgment on the basis of qualified immunity; two officers appeal the court's refusal to dismiss certain state law claims; Woods cross appeals the adverse summary judgment rulings. For the reasons assigned we affirm that part of the trial court's rulings over which we have interlocutory appellate jurisdiction and dismiss the appeals for that part of the rulings over which we lack that jurisdiction.

### Background

Woods alleges that on January 14, 1990 corrections officer Sergeant Leon Daigrepont warned him that if he did not become an informant bad things would happen to him, including transfer to a less desirable part of

the prison. On that day Woods reported the alleged threat by letter addressed to United States District Judge Frank J. Polozola, who was presiding over pending prison litigation, and to Larry Smith, the Warden of Angola.[1] Three days later Woods handed a copy of the letter to Lieutenant Frank Palermo with the request that he pass the copy to the shift supervisor. A few hours later Palermo informed Woods of the issuance of a disciplinary charge for defiance and that he would be placed in administrative lockdown.[2] The defiance was defined by Palermo as Woods' use of the referenced letter "to coerce [Palermo] into preventing Sgt. L. Daigrepont from doing his job."

Later that day Woods received a second disciplinary charge, this one signed by Sergeant John Preston, accusing Woods of refusing verbal orders to pack his belongings for the transfer to administrative segregation. Woods asserts that Captain Martin Regel and Lieutenant Palermo handed him the second disciplinary report while taunting him as he packed his bags. Woods alleges that Regel stated: "I know you know that we Security people stick together like you prisoners, didn't Sergeant Daigrepont tell you he gets what he wants?"; and Palermo added "This will make sure we don't see you around here for awhile." Woods was then removed to administrative lockdown.

Woods pled not guilty to both disciplinary charges. Following a hearing, the prison Disciplinary Board found him guilty and he was sentenced to four weeks loss of canteen, ten days isolation, and a change in quarters.

Woods' efforts to pursue an administrative appeal foundered.[3]

In April 1990 Woods filed the instant *pro se* complaint, invoking 42 U.S.C. §§ 1983, 1985(3), and 1986, against Smith, Palermo, Daigrepont, and Regel,[4] alleging *inter alia*, that the defendants conspired to issue false disciplinary reports in retaliation for his exercise of the constitutional right of access to the courts. Woods claimed that the acts directed toward him violated state law, as well as the first and fourteenth amendments to the Constitution. He amended his complaint to add as defendants Preston, Captain Mike Roberts, Harvey Grimmer, and Major Leslie Dupont. He sought monetary, declaratory, and injunctive relief.

The district court granted summary judgment on several of Woods' claims, including all made against the defendants in their official capacities. Finding the existence of genuine issues of material fact regarding whether Preston and Palermo issued the disciplinary reports for a retaliatory purpose, the court denied their motion for summary judgment on the basis of qualified immunity. Finally, the court declined to dismiss the remaining state law claims against Daigrepont, Regel, Palermo, Preston, Grimmer, and Roberts. The remaining defendants timely appealed and Woods cross-appealed.[5]

## Analysis

■ Preston and Palermo appeal the trial court's refusal to grant summary judgment on their qualified immunity defense, challenging the court's conclusions regarding the legal elements of the retaliation claim.[6]

---

1. The letter was entitled *"RE: NOTICE OF ANTICIPATED CONSPIRACY TO COMMIT MALFEASANCE AND FALSIFY DOCUMENTS."* Woods wrote that "This notice is in an anticipation of future activities by Correctional Officer, Louisiana State Penitentiary at Angola, Leon DaigrePont, Sgt., respectfully."

2. The disciplinary report reflected 11:15 a.m. as the time of the incident. This was the approximate time Woods had asked that his letter be forwarded to the shift supervisor.

3. Woods initiated two Administrative Remedy Procedures arising out of this matter. The appeals were rejected because the appropriate administrative remedy for disciplinary matters is

the disciplinary process and the appeal procedures. The district court determined that Woods had attempted to exhaust his administrative remedies in good faith, under 42 U.S.C. § 1997e(a)(1).

4. Regel was identified as John Doe in the initial complaint.

5. The court dismissed Dupont and Smith after determining that they were not personally involved with the alleged constitutional torts. Woods does not appeal this dismissal.

6. The magistrate judge stated the necessary elements of a retaliation claim as: (1) a prison official acting under color of state law; and (2)

Faced with the purely legal question whether Woods' complaint stated a constitutional cause of action, we have jurisdiction to review this interlocutory judgment.[7] Woods contests our appellate jurisdiction, pointing to the trial court's finding of disputed issues of material fact. Collateral review would nonetheless be appropriate if we accept the defendants' contention that the disputed facts are not material to the essential issue of qualified immunity.[8]

We review *de novo* the district court's denial of a summary judgment motion. Movants may prevail only if they have demonstrated that there are no genuine issues of material fact and that they are entitled to summary judgment as a matter of law.[9] The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident.[10] In assessing the defense we must first inquire whether the plaintiff has asserted the violation of a clearly established constitutional right. If that inquiry is answered in the affirmative, we then determine whether the defendant's conduct was objectively reasonable in light of the established law.[11]

Woods avers that Palermo and Preston filed the two disciplinary reports in retaliation for his letter to Judge Polozola and Warden Smith. He maintains that these actions violated his right to be free from retaliation for the exercise of his first amendment right of access to the courts. The law of this circuit is clearly established, and was so in 1990 when the instant disciplinary charges issued, that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.[12] The defendants candidly concede that this is a claim of constitutional proportions which is actionable under section 1983, but advance the proposition that Woods may not allege such a claim unless he first establishes that the underlying disciplinary proceedings were ultimately terminated in his favor.

We are not persuaded. Under this circuit's controlling precedents, favorable termination is not a requisite of a retaliatory interference claim.[13] Defendants rely heavily on an analogy with a section 1983 malicious prosecution claim where we have held favorable termination to be an element of the offense.[14] The two causes of action, however, have an essential difference. As we explained in *Brummett*, "[t]he essence of a malicious prosecution claim is a groundless

---

intentional retaliation for the exercise of a constitutionally protected activity.

**7.** *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that the district court's denial of a claim of qualified immunity is appealable, to the extent that it turns on an issue of law.)

**8.** *See Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (explaining that the issue of qualified immunity should be resolved at the earliest possible stage of litigation); *Lampkin v. City of Nacogdoches,* 7 F.3d 430 (5th Cir.1993) (explaining that collateral order jurisdiction does not exist if defense cannot prevail as a matter of law), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994); *Samaad v. City of Dallas,* 940 F.2d 925, 942 (5th Cir.1991) (finding jurisdiction to review, even though "the denial of qualified immunity ultimately turned on an issue of fact, the only reason that is so is that the court erroneously decided an issue of law.").

**9.** *Lampkin.*

**10.** *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

**11.** *Spann v. Rainey,* 987 F.2d 1110 (5th Cir. 1993).

**12.** *Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.), *opinion amended in part and vacated in part,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Gibbs v. King,* 779 F.2d 1040 (5th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Andrade v. Hauck,* 452 F.2d 1071 (5th Cir.1971).

**13.** *But see Henderson v. Baird,* 29 F.3d 464 (8th Cir.1994) (effectively imposing a favorable termination requirement in this context), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995).

**14.** *Brummett v. Camble,* 946 F.2d 1178 (5th Cir. 1991), *cert. denied,* 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992). *See also Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

prosecution." [15] Indeed, the focus of that action is the ultimate merit of the underlying proceeding. The retaliation claim, on the other hand, focuses on the interference, asking only whether there has been an obstruction of the exercise of a constitutional right.[16]

Further, in a malicious prosecution claim, resolution of the underlying proceedings typically is within the province of a judge, jury, or senior prosecutor. This differs sharply from the procedures at bar where the disciplinary proceedings are conducted solely by corrections officials. Mindful of that critical difference, we are not prepared to require a favorable termination before examining an otherwise legitimate constitutional complaint. Such a requirement would unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims.[17] This we will not do, for as we previously have stated, "the court with which [the inmate] sought contact, and not his jailer, will determine the merits of his claim." [18]

■ We emphasize that our concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report.[19] An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.[20] Our inquiry today looks only to whether there has been a violation of a constitutional right. As our colleagues of the Seventh Circuit have held, proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus.[21] Our colleagues in the Eleventh Circuit have opined that an allegation of retaliatory disciplinary charges could give rise to either an independent section 1983 action or be part of a procedural due process review of the disciplinary hearing.[22]

Further, adding a favorable termination requirement in this setting would create the anomaly of establishing a more onerous exhaustion requirement for section 1983 actions than is required in habeas corpus proceedings. Unlike habeas claims, it is clearly settled that, except for the limited exception Congress has established, exhaustion of state judicial or administrative remedies is not a prerequisite to the bringing of a section 1983 claim.[23] The effect of a favorable termi-

15. *Brummett,* 946 F.2d at 1183.

16. This court has held that a prisoner must show favorable termination prior to bringing a section 1983 claim based simply on the filing of a false disciplinary charge, absent an allegation of retaliatory interference with the exercise of a constitutional right. *Ordaz v. Martin,* 5 F.3d 529 (5th Cir.1993) (unpublished). Drawing an analogy with malicious prosecution, we reasoned that absent proof of favorable termination there was no arguable basis for finding the violation of a federally protected right. Such reasoning is inapplicable where a claim of constitutional dimension lies at the very core, however, of the complaint.

17. *See Orebaugh v. Caspari,* 910 F.2d 526 (8th Cir.1990) (Heaney, J., dissenting).

18. *Andrade,* 452 F.2d at 1072.

19. Compare these facts with those in *Ordaz,* where the petitioner's claim was based solely on the falsity of the disciplinary reports.

20. *See Mt. Healthy City School District Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Jackson v. Cain,* 864 F.2d 1235 (5th Cir.1989); *Smith v. Maschner,* 899 F.2d 940 (10th Cir.1990); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988).

21. *Cain v. Lane,* 857 F.2d 1139 (7th Cir.1988). *See also Black v. Lane,* 22 F.3d 1395 (7th Cir. 1994) (rejecting defendant's claim that filing of false disciplinary charges does not state a due process claim where procedural requirements are met and disciplinary action is supported by some evidence, because retaliatory issuance of false disciplinary charges can themselves amount to a violation of substantive due process); *Franco,* 854 F.2d at 589 (overturning district court's ruling that procedural due process in disciplinary proceeding could eliminate liability for intentional filing of false charges; the court explained that because the right of access to the courts is substantive rather than procedural, it "cannot be obstructed, regardless of the procedural means applied.").

22. *Maschner.*

23. *See* 42 U.S.C. § 1997e (conferring the district court with discretion to require an inmate to exhaust prison grievance procedures prior to having case heard in federal court); *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

In *Patsy,* the Court considered section 1983's legislative history, and concluded that one reason

nation requirement could conceivably defer review of a civil rights action until the Supreme Court has reviewed a state adjudication, or precluding it altogether by denying a writ of certiorari.

While we remain fully supportive of the proposition that prison officials must have wide latitude in the control and disciplining of inmates, that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights."[24] Within that limitation we intend no undue restriction of actions legitimately motivated by concerns of prison order and discipline. We agree with our colleagues of the Fourth Circuit when they cautioned:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.[25]

■ To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred.[26] This places a significant burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge.[27] The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."[28] Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate.

■ Defendants Daigrepont and Regel contest the trial court's refusal to dismiss the remaining state law claims, observing that all federal claims against them have been dismissed. We lack jurisdiction to reach the merits of that appeal. Although the collateral order doctrine allows that review of the district court's denial of qualified immunity to Preston and Palermo, that allowance does not confer "pendent appellate jurisdiction" over the other issues.[29]

Congress did not impose an exhaustion requirement was its belief "that the state authorities had been unable or unwilling to protect the constitutional rights of individuals or to punish those who violated these rights." *Id.* at 505, 102 S.Ct. at 2562. *See also McNeese v. Bd. of Educ.,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Dept. of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

24. *Franco,* 854 F.2d at 590.

25. *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995).

26. *Mt. Healthy; Maschner; Orebaugh* (Heaney, J., dissenting); *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979).

27. *See Richardson v. McDonnell,* 841 F.2d 120 (5th Cir.1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions).

28. *See Cain,* 857 F.2d at 1143 n. 6; *McDonald; Maschner.*

29. *See Swint v. Chambers County Commission,* —— U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (finding no pendent party appellate jurisdiction where court based review on considerations of judicial economy); *McKee v. City of Rockwall, Tex.,* 877 F.2d 409, 413 (5th Cir.1989) (refusing to find "so strange an animal as 'pendent party interlocutory appellate jurisdiction.'"), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990).

Although in *Swint* the Court implied that in rare circumstances pendent appellate jurisdiction may be proper—if issues were "inextricably intertwined" or where "review of the former was necessary to ensure meaningful review of the latter"—defendants have not advanced reasons for review more compelling than those rejected by the Court in *Swint,* —— U.S. at ——, 115 S.Ct. at 1212. *See also Silver Star Enterprises, Inc. v. M/V Saramacca,* 19 F.3d 1008 (5th Cir.1994) (finding two orders not inextricably intertwined for purposes of pendent appellate jurisdiction).

Nor can we derive jurisdiction from the fact that the defendants raise eleventh amendment immunity as a defense to the state law claims. Although the Court recently emphasized that denials of eleventh amendment immunity, like denials of qualified immunity, fall within the limited category of cases that warrant collateral review under *Cohen v. Beneficial Industrial Loan Corporation*,[30] we find no such denial here in the trial court's refusal to dismiss the state law claims. The judgment appealed, therefore, does not satisfy the *Cohen* requirement for collateral review.

Woods cross-appeals the district court's partial grant of summary judgment for the defendants. The defendants move to dismiss the cross-appeal because the district court's ruling was not a final appealable order. Agreeing that we have no jurisdiction to consider the court's interlocutory order, that motion is granted.[31]

The judgment denying summary judgment on the grounds of qualified immunity to Palermo and Preston is AFFIRMED. The other appeals and Woods' cross-appeal are DISMISSED for lack of appellate jurisdiction.

---

**30.** 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, —— U.S. ——, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

**31.** Fed.R.Civ.P. 54(b).