

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2001

# Rauser v. Horn

Precedential or Non-Precedential:

Docket 99-4013

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Rauser v. Horn" (2001). *2001 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 26, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-4013

HENRY RAUSER,
        Appellant

v.

MARTIN HORN, in his official capacity as Commissioner
of the Pennsylvania Department of Corrections;
WILLIAM F. WARD, in his official capacity as
Chairman of the Penna. Board of Par ole

On Appeal From the United States District Court
for the Western District of Pennsylvania
(D.C. No. 98-cv-01538)
District Judge: Honorable William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2001

Before: NYGAARD, ALITO, and ROSENN, Cir cuit Judges.

(Filed: February 26, 2001)

        Jon Romberg, Esquire
        Seton Hall University School of Law
        833 McCarter Highway
        Newark, NJ 07102

         Counsel for Appellant

          Calvin R. Koons, Esquire
          Office of Attorney General
           of Pennsylvania
          Strawberry Square, 15th Floor
          Harrisburg, PA 17120

           Counsel for Appellees

OPINION OF THE COURT

ROSENN, Circuit Judge.

In this appeal, we are called upon to announce the burden of proof that a prisoner must shoulder when he alleges that prison officials have retaliated against him for exercising his constitutional rights. The plaintiff, Henry Rauser, is an inmate serving his eighth year of a five to ten year sentence for a drug-related offense. He filed this suit in the United States District Court for the W estern District of Pennsylvania alleging that the officials at the Pennsylvania State Correctional Facility at Camp Hill violated his First Amendment right to religious freedom and retaliated against him when he insisted on exer cising that right. The District Court held that the prison officials had violated the Establishment Clause as a matter of law and enjoined further violations. However, it dismissed Rauser's retaliation claim on summary judgment. Although the former decision is not challenged on appeal, Rauser timely appealed from the grant of summary judgment on his retaliation claim. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

I.

In 1997, Rauser became eligible for parole. In preparation for his parole review, the Pennsylvania Department of Corrections ("the DOC") issued a Pr escriptive Program Plan for Rauser, which required him to complete a series of behavioral programs before the DOC would r ecommend his release. Among the programs Rauser was r equired to complete were Alcoholics Anonymous ("AA") and/or

Narcotics Anonymous ("NA"). Both of these programs are centered on a belief in a Supreme Being and require participants to accept God as a treatment for their addictions.

After completing a related religious substance abuse program known as the "New Values T en Week Twelve-Step Lecture," Rauser objected to continuing in AA/NA on the basis of his own religious beliefs. In spite of this objection, the DOC refused to consider recommending Rauser for parole unless he participated in AA or NA. The DOC did not offer Rauser a non-religious alter native to these programs until after he filed the complaint in this action.

Rauser alleges that the Department took three actions in retaliation for his insistence on religious freedom. First, the DOC transferred Rauser from its Corr ectional Facility in Camp Hill, Pennsylvania, to a facility in Waynesburg, Pennsylvania, far from his home and family. When he arrived at the Waynesburg facility, the DOC changed Rauser's job classification from Class 3, Step D, the highest level attainable by an inmate, to Class 1, Step A, the lowest possible designation. This reclassification was accompanied by a dramatic drop in Rauser's rate of pay, fr om $.41 per hour to $.18 per hour. Finally, the DOC r efused to recommend Rauser for parole, stating that"this recommendation is based on the incompletion of programs stipulated in [Rauser's] PPP, i.e.,[the] D[rug] & A[lcohol] program."

On September 16, 1998, several months after he r eceived a negative parole recommendation, Rauserfiled this 42 U.S.C. S 1983 action in the United States District Court for the Western District of Pennsylvania. His complaint alleged that the DOC's requirement that he participate in religious addition therapy violated the establishment and fr ee exercise clauses of the First Amendment. He sought declaratory and injunctive relief, as well as monetary damages for these violations. Rauser also sought declaratory, injunctive and monetary relief for the allegedly retaliatory transfer and wage reduction. The District Court referred Rauser's case to Magistrate Judge Francis X. Caiazza (MJ).

3

The defendant prison officials moved to dismiss Rauser's complaint for failure to state a claim or , alternatively, for summary judgment. Judge Caiazza issued a report recommending that the defendants' motion for summary judgment on Rauser's Free Exercise claim be denied because the AA/NA requirement violated the establishment clause as a matter of law. The MJ further recommended that the defendants be ordered to allow Rauser to decline to participate in religious programs and that all entries in the DOC's files adversely affecting Rauser's parole eligibility based on his refusal to complete such programs be expunged. The District Court adopted these recommendations, none of which are challenged on appeal.

Judge Caiazza also recommended that the District Court grant the defendants' motion for summary judgment on Rauser's retaliation claim. The District Court adopted this recommendation in an Order dated December 3, 1999, holding that Rauser enjoyed no constitutional pr otection against retaliation because he possessed no pr otected liberty interest in early parole, prison wages, or a specific place of confinement. This order is the subject of this appeal. We hold that the relevant question is not whether Rauser had a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.1 Because Rauser has demonstrated that material questions of fact relevant to this inquiry exist, we reverse the order of summary judgment and remand this case for trial.

II.

In a recent case entitled Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000), this court held that,"government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an

_____

1. The prison officials concede on appeal that the District Court failed to apply the proper legal standard for evaluating constitutional retaliation claims. Accordingly, we have concluded that oral argument would not materially assist in the resolution of this appeal. We therefore order the case submitted without oral argument.

individual for the exercise of a constitutional right."
(quoting Thaddeus-X v. Blatter, 175 F .3d 378, 386 (6th Cir.
1999)(en banc)). Accordingly, the law of this circuit is clear
that a prisoner litigating a retaliation claim need not prove
that he had an independent liberty interest in the privileges
he was denied. Our primary purpose in this appeal,
therefore, is to set forth with specificity the elements of a
prisoner's cause of action for retaliation and the burden of
proof he must carry to succeed.

As a threshold matter, a prisoner -plaintiff in a retaliation
case must prove that the conduct which led to the alleged
retaliation was constitutionally protected. See Thaddeus-X,
175 F.3d at 389; Drexel v. V aughn, 1998 WL 151798 at *7
(E.D.Pa.)(determining that prisoner had engaged in
constitutionally protected conduct befor e proceeding with
retaliation inquiry). In this case, the District Court
determined that Rauser's refusal to participate in a
religious program was protected by the First Amendment.
This conclusion has not been challenged on appeal.

Next, a prisoner litigating a retaliation claim must show
that he suffered some "adverse action" at the hands of the
prison officials. See Allah, 229 F .3d at 225. Under Allah, a
prisoner-plaintiff satisfies this r equirement by
demonstrating that the action "was sufficient to deter a
person of ordinary firmness from exercising his
[constitutional] rights." Id. Her e, Rauser has produced
evidence that he was denied parole, transferr ed to a distant
prison where his family could not visit him r egularly, and
penalized financially. The prison officials do not dispute
this evidence. Accordingly, Rauser has pr esented sufficient
evidence of adversity to survive summary judgment.

Once these two threshold criteria are met, there remains
the question of how a prisoner-plaintif f must go about
proving a causal link between the exercise of his
constitutional rights and the adverse action taken against
him. This is a question of first impression in this circuit. In
Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287
(1977), the Supreme Court used a burden-shifting
framework to decide a retaliation case that ar ose in the
public employment context. The Court held that the
plaintiff bore the initial burden of proving that his

5

constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him. See id. The burden then shifted to the defendant to pr ove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity. See id. In this appeal, we join the several circuits that have imported the Mount Healthy burden-shifting framework into the prison context.[2] See Thaddeus-X, 175 F.3d at 399; Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996); Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996).

We recognize that the task of prison administration is difficult, and that courts should affor d deference to decisions made by prison officials, who possess the necessary expertise. In Turner v. Safely , 482 U.S. 78, 89 (1987), the Supreme Court held that a prison r egulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." In adopting the Mount Healthy framework, we do not discard the deferential standar d articulated in Turner. Rather, we incorporate the balancing test announced in Turner into the Mount Healthy bur den-shifting framework. This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.

III.

Applying the standard discussed above to the case before us, we conclude that summary judgment was impr oper. In determining whether summary judgment is pr oper, the court must view the evidence and all justifiable inferences

_____

2. But see Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993). Cf. Woods v. Smith, 60 F.3d 1161, 1166 & n.26 (5th Cir . 1995) (citing Mount Healthy but stating that the prisoner must establish that but for the retaliatory motive the complained of incident would not have occurred); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir . 1979) (same).

to be drawn therefrom in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Rauser has presented a gr eat deal of evidence from which a reasonable jury could conclude that the prison officials penalized him because he insisted on exercising his First Amendment rights. First, Rauser has sworn that a DOC official warned him shortly before his transfer not to "try and disrupt their alcohol pr ograms" with constitutional challenges and threatened that such challenges would result in a denial of par ole. Second, the DOC acknowledged that its failure to grant Rauser a favorable parole recommendation was due to his "failure to complete prescribed treatment plans," specifically AA/NA.

Finally, Rauser has demonstrated a suggestive temporal proximity between his insistence on his First Amendment rights and his transfer and wage reduction. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)(stating that suggestive timing is relevant to causation in retaliation case). The District Court noted that Rauser first raised his religious objections "prior to January 1998." On January 26, 1998, the DOC transferred Rauser to the Waynesburg facility and cut his wages by more than half. On the eve of that transfer, a DOC official warned Rauser that if he continued to disrupt prison programs with Constitutional challenges, he would be punished with a denial of parole.

IV.

Viewing the evidence as a whole in the light most favorable to Rauser, we conclude that a r easonable jury could determine that Rauser's protected conduct was a motivating factor in the DOC's decision to transfer him, cut his wages and deny him parole. The DOC has of fered no evidence to suggest that these actions were taken for any other reason, penologically legitimate or otherwise. Accordingly, the District Court's grant of summary judgment will be reversed and the case r emanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.

7

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit