United States Court of Appeals
Fifth Circuit

**F I L E D**

June 6, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-61022
Summary Calendar

CLINTON L. CRESSIONNIE,

Plaintiff-Appellant,

versus

JEFFERY L. HAMPLE, in his individual and official capacities as
Internal Audit Investigator of Mississippi Department of
Corrections; MARVIN OVERSTREET, in his individual and official
capacities as Internal Audit Investigator of Mississippi
Department of Corrections; PATTY LEGG, in her individual and
official capacities as State Hearing Officer; CHRISTOPHER EPPS,
in his individual and official capacities as Commissioner of
Mississippi Department of Corrections,

Defendants-Appellees.

Appeal from the United States District Court
For the Northern District of Mississippi

(USDC No. 4:04-CV-186-GHD)

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Proceeding in forma pauperis, Clinton L. Cressionnie, Mississippi prisoner No. 22155, brought claims under 42 U.S.C. § 1983 against various officials in the Mississippi Department of Corrections ("MDOC"), alleging retaliation for the exercise of constitutional rights. Prior to service of the defendant officials, the district court dismissed Cressionnie's claims under

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. We affirm in part and vacate and remand in part for further proceedings.

<u>**I**</u>

As we must, we take all facts alleged in Cressionnie's petition as true. Cressionnie alleges the following: On December 15, 2003, he made a phone call to his sister using the personal identification number of Patrick Presley, another inmate at the Mississippi State Penitentiary in Parchman, Mississippi. Later that same night, Presley committed suicide. Prison officials began an investigation. Two days later, on December 17, 2003, defendant Jeffery Hample, an investigator for the Internal Audit Division of the MDOC, questioned Cressionnie regarding Presley's suicide. Cressionnie admitted using Presley's PIN to call his sister. Cressionnie asked Hample whether Hample would issue Cressionnie a Rule Violation Report ("RVR") for using Presley's PIN, but Hample did not respond. Cressionnie alleges that Hample had 24 hours to issue an RVR under MDOC operating procedures, but that Hample did not do so.

On December 30, 2003, Cressionnie mailed letters to Presley's mother, Presley's wife, and their attorney, stating his belief that Presley committed suicide because of a new prisoner classification system at Parchman that resulted in some prisoners, including Presley, being placed in isolation for extended periods of time.

The next day, December 31, 2003, a local newspaper quoted defendant Christopher Epps, Commissioner of the MDOC, as stating that Parchman officials had no role in causing Presley's suicide. Epps attributed Presley's suicide to a "Dear John" letter Presley recently received from his wife. On January 12, 2004, another article regarding Presley's suicide was in the paper. This article included references to statements by, and quotes from, an anonymous inmate at Parchman that blamed the suicide on the new prisoner classification system. Cressionnie alleges that the statements and quotes from the anonymous inmate came from the letters he sent to Presley's family and attorney.

Eight days after the letter quoting the anonymous inmate, defendant Hample issued an RVR to Cressionnie for unauthorized use of telephone privileges—presumably for the use of Presley's PIN. Cressionnie requested that Hample appear as a witness at the hearing on the RVR. Hample refused to give a statement to the Parchman official investigating the RVR because of the sensitive nature of his discussion with Cressionnie, but Hample stated that he would appear at the hearing.

Cressionnie's hearing on the RVR occurred on February 19, 2004. Hample did not appear; rather, defendant Marvin Overstreet, also an investigator with the Internal Audit Division of the MDOC, appeared in Hample's place. Cressionnie asserted that the RVR was issued in retaliation for his statements appearing in the local newspaper; Overstreet stated that he should charge Cressionnie with

3

obstruction of the investigation into Presley's suicide. Cressionnie alleges that defendant Patty Legg, a hearing officer at Parchman, found Cressionnie guilty of the RVR prior to the completion of the hearing. Further, Cressionnie alleges that about a month after the hearing, he was told by an unnamed officer at Parchman that Legg had been ordered to find Cressionni guilty of the RVR.

With the guilty finding on the RVR, Cressionnie had 26 points in the prisoner classification system, which kept him in isolation. Cressionnie alleges that were it not for the RVR, he would only have 21 points, which would have allowed him to return to the general population.

Cressionnie brought claims under 42 U.S.C. § 1983 against Hample, Legg, and Overstreet, alleging that they participated in the issuance of the RVR and the guilty finding in retaliation for Cressionnie sending letters to Presley's family and their attorney that included criticism of the MDOC and Parchman. Cressionnie brought claims under 42 U.S.C. § 1983 against Epps, alleging that Epps ordered that the RVR be issued and that Cressionnie be found guilty in retaliation for the same letters. Cressionnie sought expungement of the RVR and the guilty finding, along with a return to the general prison population at Parchman. He also sought an unspecified amount of nominal, compensatory, and punitive damages from all of the defendants. The district court dismissed Cressionnie's claims under 28 U.S.C. § 1915(e)(2)(b)(ii) for

4

failure to state a claim upon which relief can be granted. Cressionnie appealed.

## II

We first determine whether Cressionnie's appeal was timely. Federal Rule of Appellate Procedure 4(a)(1)(A) requires that the notice of appeal in a civil action be filed within 30 days of entry of the judgment or order from which appeal is taken. If a party files a timely motion under Federal Rule of Civil Procedure 59, the time to file an appeal runs from the entry of the order disposing of the Rule 59 motion.[1] A Rule 59 motion is timely if it is filed no later than 10 days after entry of the judgment,[2] and the district court may not extend time for filing a Rule 59 motion.[3]

Here, Cressionnie filed a "motion for reconsideration" more than 10 days after the entry of judgment. We have previously noted that "[t]he Federal Rules do not recognize a 'motion for reconsideration' *in haec verba*."[4] If a motion so named challenges the prior judgment on the merits, we will treat it as a motion 'to alter or amend' the judgment under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b).[5] Cressionnie's motion

---

[1]Fed. R. App. P. 4(a)(4)(A).

[2]Fed. R. Civ. P. 59(e).

[3]Fed. R. Civ. P. 6(b).

[4]*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[5]*Id.*

came after the 10-day window for a Rule 59 motion expired, thus it must be treated as a motion for relief from judgment under Rule 60. A Rule 60 motion, however, does not suspend the time for filing a notice of appeal. Thus, Cressionnie's notice of appeal, filed more than 30 days after the entry of judgment, was facially untimely.

Despite this, the Supreme Court imposed a "unique circumstances" exception to the rules. Thus, we have discretion to ignore a facially untimely notice of appeal when a litigant relies upon a district court's representation that a Rule 59 motion is timely, even though a district court has no authority to extend time to file such a motion.[6] Here, the district court expressly allowed Cressionnie additional time to file his motion, representing that it is typical to give prisoner pro se litigants additional time, and Cressionnie relied upon the district court's statement. As in *Fairley*, this triggers the unique circumstances exception, and we have jurisdiction over Cressionnie's appeal.[7]

## III

We review *de novo* the district court's dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Dismissal is proper if, taking all of plaintiff's allegations as true, it

---

[6]*Fairley v. Jones*, 824 F.2d 440, 442 (5th Cir. 1987); *see Wolfsohn v. Hankin*, 376 U.S. 203 (1964) (mem.), *rev'g* 321 F.2d 393 (D.C. Cir. 1963); *Thompson v. INS*, 375 U.S. 384, 386-87 (1964).

[7]*Fairley*, 824 F.2d at 442-43.

6

appears that no relief could be granted on the plaintiff's alleged facts.[8]

For Cressionnie's retaliation claims to go forward, he must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse act; and (4) causation.[9]  "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate."[10] "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred."[11]

With three of the defendants, the district court correctly dismissed Cressionnie's claims.  With defendant Epps, Cressionnie's allegation of his personal belief that Epps retaliated against him is insufficient.[12]  With defendant Legg, Cressionnie alleged no evidence from which retaliation could be inferred.[13]  With defendant

---

[8]*Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).

[9]*McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

[10]*Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).

[11]*Id.* at 1166 (internal quotation marks omitted).

[12]*Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) ("The relevant showing in [retaliation cases] must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).

[13]*Woods*, 60 F.3d at 1166.

Overstreet, Cressionnie did not allege that Overstreet took an adverse act against him. Accordingly, the district court's dismissal of Cressionnie's claims against Epps, Legg, and Overstreet is affirmed.

With defendant Hample, Cressionnie's complaint alleged sufficient facts to establish a retaliation claim. Cressionnie has a constitutional right to correspond with the general public and to contact the press.[14] Cressionnie alleges that Hample's action--issuing the RVR--was in retaliation for Cressionnie sending letters to Presley's lawyer and family that were critical of the prison and prison officials. Further, in *Hart v. Hairston*, we held that the loss of commissary privileges and imposition of cell restrictions constitutes an adverse act.[15] Here, Cressionnie alleges that without the RVR for unauthorized phone use, he would have been allowed to return to the general prison population.

Further, Cressionnie alleged a chronology of events from which a retaliatory motivation on the part of Hample and causation could plausibly be inferred. Here, Cressionnie admitted to the phone violation, yet no RVR issued for over a month and only after the local newspaper published an article quoting an "anonymous inmate"

---

[14]*Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (holding that prisoners "retain, in a general sense, a right to criticize prison officials"); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1996); *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.").

[15]343 F.3d 762, 764 (5th Cir. 2003).

at the prison.  These allegations are sufficient to state a valid claim for retaliation under § 1983.  That Cressionnie admitted to the rule violation is of no moment.  Our focus is on whether there was "retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report."[16] Accordingly, the district court's dismissal for failure to state a claim upon which relief can be granted is vacated and the case is remanded for further proceedings.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

[16]*Woods*, 60 F.3d at 1166.