# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2022

Lyle W. Cayce
Clerk

No. 20-30430

Michael Vernell Young,

*Plaintiff—Appellant*,

*versus*

James M. LeBlanc,
*Secretary, Department of Public Safety and Corrections*;
Travis Day, *Warden, B. B. Rayburn Correctional Center*;
Tim Crawford, *Major*;
Kevin Luper, *Colonel*; Andria Johnson, *Major*;
Suzanne Sheridan, *Administrative Assistant*; Keith Bickham,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:19-CV-13516

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Per Curiam:*

Michael Young, a Louisiana prisoner, appeals *pro se* the dismissal of his

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

litany of claims against prison officials.  Young asserts twelve grounds, most of which patently lack merit.  We principally address his two most consequential complaints: (1) that the district court erred in dismissing his retaliation claim and (2) that he had a protected liberty interest in being considered for parole.

We dismiss Young's appeal in part insofar as he challenges unappealable orders.  We reverse the order in part because Young pleaded a timeline of events from which retaliation plausibly can be inferred.  We affirm in all other respects over which we have jurisdiction.

## I.

Because this appeal arose at the pleading stage, we recount the facts Young alleged in his complaint.

## A.

Young brought an earlier lawsuit against officials at the B.B. Rayburn Correctional Center challenging his confinement in lockdown.  Young told the court that prison officials were strategically releasing him from lockdown to try to moot the action.  Over Young's objection, the court dismissed that case as moot on May 24, 2019.

Less than a month later, prison officials placed Young on extended lockdown after a staff member, Rachael Smith, complained that Young had harassed her.  Young says her report of the incident doesn't add up because it describes the incident as happening at a time when he couldn't have been near Smith.  He also says that prison surveillance footage exonerates him.

Young attached Smith's report to his complaint.  In the report, Smith charged Young with "attempt[ing] to engage in a non professional relationship" with her.  Young allegedly asked her whether she liked her job.  When she objected, Young is supposed to have said, "[Y]ou have a bad attitude, and

I will help you adjust your attitude[ ] and break you down." Smith said Young further told her, "I hope they put you in my dorm." Young was placed in segregation after Smith reported the incident to one of her superiors.

The report says Young was judged guilty of the offense, despite having pleaded not guilty, because the report was "clear and precise" (capitalization altered) and because Smith was "determined to be more credible" than Young. Young was formally punished with 90 days in lockdown. But he says it was really an "indeterminate" lockdown period that is reassessed every 90 days. He claimed to have been in lockdown for nearly 15 months when he filed his opening brief.

Young defended himself before the disciplinary board. He says he asked to see the camera footage, and the board agreed. After reviewing the footage, Young claimed that no one could establish that he had harassed Smith, a fact that the disciplinary board acknowledged. The board agreed to drop one of the charges but still found him guilty of "Defiance."

Young exhausted his appeals within the prison system. During the internal appeal process, Young alleges that one of the defendants spoke to him about his lockdown sentence. According to Young, the officer said his sentence was "not going away" because of "all those times [Young was] sentenced to [lockdown] but [was] let out." Young explains that the officer was referring to the occasions when officials had let him out of lockdown to moot his earlier case. The officer allegedly told Young that those incidents had now "come back to bite [him]." Young asserts that another officer later "re-aff[ir]med that [he] was being paid back for all the times they let [him] out of [lockdown]."

Young's terminal appeal was before defendant James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections. Young attached LeBlanc's opinion to his complaint. That opinion explains

that Smith's report was "clear" and "concise" and concluded that it provided "convincing evidence of the violations as charged." It noted that Young had not provided rebuttal evidence. Accordingly, LeBlanc credited Smith's account and denied Young's appeal.

### B.

Young sued several prison officials under 42 U.S.C. § 1983. He claimed that they had violated his First and Fourteenth Amendment rights by placing him in "disciplinary segregation" and denying him "access to court."

Young's complaint was assigned to a magistrate judge ("MJ"), who conducted a hearing under *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), to help decide whether Young's claims made him eligible to proceed *in forma pauperis*. At the hearing, Young confirmed that his claim was essentially that "defendants filed the disciplinary charges against him . . . because he filed the [prior] lawsuit."

The MJ wrote a meticulous report recommending that Young's claims be dismissed with prejudice "either as legally frivolous" or because Young had failed to state a claim. Two aspects of the MJ's report are pertinent to our analysis. The MJ explained that Young's allegations didn't plausibly imply retaliation in light of Smith's report. The MJ also reasoned that any delay in Young's eligibility for parole consideration arising from the lockdown did not impose "an atypical and significant hardship on him such that would constitute a constitutional violation."

Young filed six objections to the MJ's report. The court rejected each of them and adopted the MJ's report in full. Accordingly, it dismissed Young's complaint with prejudice "either as legally frivolous . . . or under Rule 12(b)(6)."

## II.

Because the district court gave alternative bases for dismissing, we review the order under the least deferential of the relevant standards. *See Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). Accordingly, we review the district court's dismissal *de novo*. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). We construe "pro se filings liberally." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). But "even 'pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief.'" *Moler v. Wells*, 18 F.4th 162, 168 (5th Cir. 2021) (alteration adopted) (quoting *Simbaki*, 767 F.3d at 484).

### A.

Prison officials "may not retaliate" against prisoners for filing lawsuits. *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019) (quoting *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017)). Proving such a retaliation claim entails a "significant burden." *Id.* (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). At the pleading stage, Young had to allege facts plausibly implying (1) that he "exercised a constitutional right," (2) that the defendants "*intended* to retaliate against" him, and (3) that his "constitutional exercise *caused*" the defendants "to commit a retaliatory act that was more than de minimis." *Id.* (citing *Butts*, 877 F.3d at 588).

Only the third element is disputed. We "carefully scrutinize" a prisoner's allegations that officials punished him in retaliation rather than for legitimate reasons. *Woods*, 60 F.3d at 1166. So a prisoner must allege either (1) "direct evidence of motivation" or (2) "a chronology of events from which retaliation may plausibly be inferred." *Id.* (quotation omitted).

Young's retaliation theory is that the defendants knew that Smith's report contained "no truth" but "still found [him] guilty." He maintains that he was disciplined "without evidence." He says his complaint "produced

No. 20-30430

direct evidence of motivation to retaliate."

The defendants respond that Young has not pleaded a timeline of events that plausibly implies retaliation. They say Young did not "identify the lawsuits" that motivated the defendants to retaliate against Young, which they maintain makes it "impossible to determine the needed chronology of events." (Quotation omitted.) "For example," they ask, "were the suits filed a month before the alleged retaliatory acts or a year before?"

But the documents that Young attached to his complaint[1] answer a more pertinent question: When did the prior suit conclude? That action was dismissed 27 days before Smith filed her report. According to Young's theory, that is the relevant timeline because the defendants were not free to retaliate against him until the prior suit was over.

We conclude that Young pleaded a plausible claim. He alleged both direct evidence of motivation and a timeline from which retaliation may plausibly be inferred. His complaint presents the following timeline:

1. Young sues prison officials to challenge his detention in lockdown;

2. That suit is dismissed as moot over Young's objection;

3. 27 days later, an official complains that Young harassed her;

4. Young is immediately placed on extended lockdown;

5. His internal appeals are denied even though video evidence fails to confirm the report, leaving only a "he-said-she-said" account;

6. While Young is on lockdown, two officials tell him that he is being punished for his prior litigation.

---

[1] The court's review includes "any documents attached to the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

No. 20-30430

That account clears the pleading threshold. When there is "almost a month" "between the predicate events and alleged retaliatory acts," one can "plausibly infer intent and causation." *Petzold*, 946 F.3d at 253–54. Combined with the alleged direct evidence of motivation, Young has stated a plausible theory of retaliatory causation.

The MJ and district court concluded otherwise on the premise that "a legitimate prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus." (Quotation omitted and alteration adopted.) But the fact that an accusation was written down does not place it beyond question—especially at the pleading stage. Young alleges that the defendants knew the report was false but acted on it anyway. If the facts he pleaded are true, that allegation is plausible. Besides, we have already rejected the suggestion that "a legitimate prison disciplinary report is an absolute bar to a retaliation claim." *Woods*, 60 F.3d at 1166. The report is "potent summary judgment evidence," *id.*, but it may be considered for its evidentiary value only at that stage.

So the district court erred in dismissing Young's retaliation claims for failure plausibly to plead causation.[2]

### B.

Young complains that his confinement in lockdown has delayed his consideration for parole. That's because he is unable to attend parole hearings. He points to a Louisiana statute[3] that he says gives him a "liberty

---

[2] It is unclear from Young's complaint what relief he is seeking. The answer to that question could affect whether he has a cause of action. *See Petzold*, 946 F.3d at 252 n.46. We do not address that issue because no party has presented it. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

[3] La. Rev. Stat. § 15:574.

interest" in parole consideration that is protected by the Due Process Clause. He says he has been confined for an "indeterminate period" under conditions creating "significant hardship." (Quotation omitted.)

The defendants maintain that Young cannot have a constitutionally protected interest in parole consideration—even if the statute gives him such a right—because he has no statutory interest in parole *release*. We agree.

Young has not identified a statutory right to early release. "Louisiana parole statutes do not create an expectancy of release or [a] liberty interest in general." *Bosworth v. Whitley*, 627 So. 2d 629, 633 (La. 1993). That deficiency is fatal to Young's claim. "[W]hen a prisoner has no liberty interest in obtaining parole[,] he cannot complain of the constitutionality of procedural devices attendant to parole decisions." *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312–13 (5th Cir. 2014) (quotation omitted and alteration adopted). In other words, there can be no constitutionally protected interest in parole consideration without a constitutionally protected interest in parole release.

The district court did not err in dismissing Young's due process claim arising from a delay in his parole consideration.

## C.

Young's remaining points are either patently unmeritorious or challenge non-orders or non-appealable orders. We reject his third,[4] fourth,[5]

---

[4] Young says the district court erroneously described his claim as charging the defendants with fabricating the disciplinary report.

[5] Young complains that the MJ denied his motion for sanctions and reserved the questions presented for a later motion.

No. 20-30430

eighth,[6] ninth,[7] tenth,[8] eleventh,[9] and twelfth[10] contentions because they do not challenge final decisions within our appellate jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 72. We reject his fifth, sixth, and seventh[11] contentions for the reasons stated by the MJ and district court.

\* \* \*

For the foregoing reasons, we DISMISS Young's appeal in part. We REVERSE the order dismissing his retaliation claims. We AFFIRM the order in all other respects over which we have jurisdiction. We REMAND for further proceedings consistent with this opinion. We express no view on the ultimate merits of any remaining claim.

---

[6] Young says the MJ should have allowed him to subpoena the defendants.

[7] Young challenges the decision not to order various forms of interim relief and discovery.

[8] Young says the district court ought to have appointed counsel to represent him. The court may consider that issue on remand.

[9] Young says the district court should have granted his motion to amend his complaint to remove claims.

[10] Young asserts that the district court did not require the defendants to answer his motion for summary judgment.

[11] In his fifth, sixth, and seventh claims—to the extent that he there raises contentions different from those already discussed—Young appeals the rulings regarding his other due process challenges.