EDITH H. JONES, Circuit Judge: *
In 2012, Plaintiff-Appellant Carlwynn J. Turner, a prisoner at the Louisiana Department of Corrections (“LDOC”), brought this pro se civil rights action against Defendant-Appellees N. Burl Cain, warden of the Louisiana State Penitentiary (hereinafter “LSP” and colloquially “Angola”), as well as his subordinates, David Yannoy, a deputy warden, and Leslie Du-pont, an assistant warden. Turner alleged that Warden Cain, Vannoy, and Dupont transferred him from the LSP after he exercised his First Amendment right of free speech. This case involves a novel prisoner free speech claim that is inadequately discussed in the district court. We affirm in part, reverse in part, and remand.
I.
Facts & Proceedings
The events giving rise to Turner’s claim began on April 16, 2011, while he was selling crafts to members of the public attending the Angola Prison Rodeo. As several potential buyers negotiated with Turner, he told them that it would be impracticable for him to accept the prices they were offering. Specifically, he remarked that Warden Cain imposed “taxes” on each item he sold. Turner describes the exchange as follows:
[H]e explained to the people standing around his hobby craft booth that he could not reduce his hobby craft prices because Warden Cain takes 18% ... from individual cash sales ... and 22%
... from individual credit card sales. [He] shared this information with the public because it affected his hobby craft business. The times he sold and how he sold them determined the worth and profit of his business. It either caused him to make a profit or loose [sic] a profit. To reduce his prices would subject him to more of a profit lost than a profit gain. Mainly because of what it cost to make a product, and the percentage that is taken from the sale of it. He explained his prices and position to settle the mind of the customer, and he *360 wanted to make it clear that he was not being mean, he was just doing business in the free market.
Such taxes were, in fact, imposed by Warden Cain.[1]
Turner alleges that Dupont’s wife overheard Turner’s remarks about the taxes and repeated them to Dupont. He further alleges that, later that day, Dupont removed Turner from the Rodeo grounds, telling Turner that “his wife ... informed him that [Turner] was telling the people about the inmates being taxed a percentage from the sale of their hobby craft,” and that, “in anger, [Dupont] vehemently” prohibited Turner from returning to the Rodeo grounds to sell crafts.
Turner also alleges that he “was never informed by ... Cain during the ‘[R]odeo • prep meetings’ that inmates were not allowed to talk about the tax percentages with the public” and that “there w[ere] no written policies or posted memorandums that informed inmates [who] sold hobby craft [that] they could not tell potential customers about the 18% and 22% tax inmates pay upon the sale of their hobby craft.” In other words, he alleges that he “had no knowledge that if he shared the tax information with [members of the] public he would be punished for doing so.” There is nothing in the record that sugr gests any restrictions on his speech existed.
Turner then alleges that Dupont did not even “write a disciplinary report ... charging [Turner] with any rule violations.” Despite the absence of any prior restraint on his speech, he was added to a list of 15-or-so “Inmates That [H]ad Rodeo Violations.” The list indicated that he had “Bribe[d] the Public”[2] (and that most of the others had “G[iven] Interview[s] To Media” or “Failed Drug Test[s]”).
Turner also alleges that, two days after he was removed from the Rodeo, Dupont met with Warden Cain about each of the violations that had occurred during the Rodeo and that, ten days after that, Warden Cain had transferred Turner and most, if not all, of the other prisoners on Dupont’s list from. LSP to other LDOC facilities. Turner avers that, as they were being transferred, Vannoy “met with [them at the gate] and said that ,.. Warden Cain don’t want to talk to any of you[;] he is angry and displeased with your behavior during the [R]odeo because you did whatever it was you did, he has decided to transfer you.” Turner was transferred to Hunt Correctional Center, where he spent approximately 59 days, before being transferred again, this time to David Wade Correctional Center.
Turner brought this action, asserting claims against Warden Cain, Dupont, and Vannoy in their official and individual capacities. He alleges specifically that they violated his First Amendment rights by retaliating against him for exercising his right to free speech at the Rodeo. Turner next alleges that, as a result of that retaliation, he (1) suffered a number of hardships as a result of the transfers, (2) lost his lucrative job, (3) was separated from some of his belongings, and (4) remains isolated from his friends and family. He seeks compensatory and punitive damages.
*361 Warden Cain, Vannoy, and Dupont moved to dismiss the claims under Fed. R.Civ.P. 12(b), asserting that Turner had failed to state a claim and that they were entitled to Eleventh Amendment immunity and qualified immunity. The magistrate judge recommended that the district court dismiss the claims except for that against Warden Cain in his individual capacity. The district court adopted the magistrate judge’s recommendations over Turner’s objections. The action proceeded and, in due course, Turner and Warden Cain each moved for summary judgment under Fed. R.Civ.P. 56. The magistrate judge recommended that the district court dismiss Turner’s remaining claim, again over Turner’s objections. Turner has timely appealed.[3]
II.
DISCUSSION
On appeal, Turner challenges both the dismissal and the adverse summary judgment. He alleges that the LSP officials retaliated against him for his discourse with members of the public.[4] “To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the [prison official’s] intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.”[5] The “retaliatory adverse act” must be “more than de minimis retaliation,”[6]
A. Motion to Dismiss
, Turner alleges that Dupont and Vannoy retaliated against him for his remarks regarding the taxes imposed by Warden Cain. We review de novo an order granting a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).[7] “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, ‘to state a claim to relief that is plausible on its face.’ ”[8] We consider the complaint “in the light most favorable to the nonmoving party,” because motions to dismiss under Rule 12(b)(6) are ‘“viewed with disfavor and [are] rarely granted.’ ”[9]
The district court adopted the magistrate judge’s determination that the retaliatory act was the transfer itself. If properly alleged, such an act exceeds the de minimus threshold because, even though a prisoner has no constitutional right to be housed in a particular institution,[10] an otherwise permissible act may *362 nonetheless violate the constitutional rights of a prisoner if ordered in retaliation for the exercise of those rights.[11] Turner alleges that Dupont was involved with or caused the transfer by telling Warden Cain about Turner’s remarks and that Vannoy was involved with or caused the transfer because he told Turner and the other prisoners that the transfer was retaliatory. But what Turner alleges, taken as true, does not establish this. He merely alleges that Dupont provided the information on which Warden Cain made his decision and that Vannoy was aware of that decision. From Turner’s allegations, it appears that the decision to transfer him was Warden Cain’s alone. Accordingly, the district court did not err in determining that Turner had not stated a claim of retaliation against Dupont and Vannoy for the transfer itself.
However, Turner sufficiently alleges that DuPont was involved in his removal from the Rodeo grounds, which constituted a retaliatory act for his- “speech” about Warden Cain’s taxes. He makes this dear both in his complaint and in in his objections to the magistrate judge’s recommendation that the district court grant the LSP officials’ motion to dismiss. As Turner is proceeding pro se, the complaint and objections are “to be liberally construed.”[12] Further, the act of removing Turner from the Rodeo grounds meets the de minimus threshold.[13] This was not a mere reassignment of prison jobs. It was the denial of Turner’s opportunity to sell his crafts, to profit from those sales, and to interact with members of the public.[14] It also disrupted his longstanding record of good behavior at the LSP. Turner also alleges that he would not have mentioned the taxes if he had known that doing so would result in his removal from the Rodeo grounds.
It is also apparent from Turner’s allegations that the restriction on his speech — if made known to him in advance — would have deterred a person of ordinary firmness from speaking. Consequently, the district court erred in dismissing Turner’s claim of retaliation against Dupont for the removal.
B. Motion for Summary Judgment
We review de novo an order granting a motion for summary judgment pursuant to Rule 56. “Summary judgment is appropriate if the. record demonstrates ‘that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.’ ”[15] “A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party.”[16] ' “When considering a motion for summary judgment, [we] construe the evidence and draw all reasonable inferences *363 in the light most favorable to the non-moving party.”[17]
The district court determined that there was no genuine issue of material fact because Turner had failed to establish that he was exercising or attempting to exercise a specific constitutional right when he commented on the taxes. The district court characterized Turner’s remarks as a grievance directed at LSP officials. It explained, based on our opinion in Freeman v. Texas Dep’t of Criminal Justice,[18] that Turner, as a prisoner, retained a right of free speech only to the extent he exercised that right in a manner consistent with his status as a prisoner. Because Turner had not raised the “grievance” in these administrative channels, his speech was not protected.[19]
Critical to this determination are (a) whether Turner’s speech was protected and (b) whether the LSP officials could restrict it. Warden Cain suggests that Turner had “no rights [sic ] to participate in [the] Rodeo simply because it is a privilege afforded to him and not a Constitutional right.” This misses the point. Turner does not contend that he had a right to participate in the craft sale at the Rodeo or that the prison officials impinged such a right. By participating with their permission, Turner was entitled to speak with the public during the event and was expected to do so. Turner insists that, once he was allowed to speak with the public, the prison officials could not limit his speech without justification.
The district court determined that the content of Turner’s speech was a grievance and, because he spoke in a prison and as a prisoner, the speech was unprotected if expressed outside the grievance procedures. This classification of Turner’s speech, however, is not supported by the record. Turner’s speech was not a grievance because it had nothing to do with his status as a prisoner. Turner made his remarks in an effort to explain that, because of the taxes, he could not reduce the price of his crafts. Significantly, Turner was addressing the public, not a prison official or another prisoner.[20] As far as we can tell, none of the justifications for restricting a prisoner’s speech to a grievance procedure is present. There is nothing to suggest that Turner’s remarks to the public had the potential for inciting violence, disturbing order in the prison, or creating security concerns. He was there because prison officials had permitted him to engage in a public event attended by large numbers of the public on prison grounds. Under these circumstances, Turner’s speech, was not in the form of a grievance, and may not have been inconsistent with his status as a prisoner. Given that Turner’s speech was not a grievance, LSP officials could not restrict his speech based on the LSP grievance procedure.
Whether there is any other justification for sanctioning Turner’s speech, we cannot say; the law, as well as the surrounding circumstances, requires more careful exegesis. Undoubtedly, “a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.”[21] However, “when a prison reg *364 ulation [or action] impinges on inmates’ constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interests.”[22] Because the district court incorrectly labeled Turner’s speech a grievance, we remand for the district court to consider whether his speech was otherwise consistent with “legitimate penological interests.” The Supreme Court in Turner identified a number of considerations relevant to this determination: “whether a ‘valid, rational connection’ exists between the regulation and the legitimate interest put forth to justify it; whether ‘alternative means of exercising the right ... remain open to prison inmates’; ‘the impact accommodation of the asserted constitutional right’ will have on prison officials and inmates; and the availability of ‘obvious, easy alternatives’ to the challenged regulation.”[23] The district court should consult these factors and determine whether the defendants could have limited Turner’s speech.
This determination will inform whether Turner’s speech was protected — or not— under the First Amendment. We remand for the district court to make this determination. To facilitate the inquiry, the court should appoint counsel for Turner. The court should also bear in mind that Cain offered in his summary judgment motion only a general justification for his contention that the speech was unprotected. We opine no further on the facts and issues that the court will confront on remand.
CONCLUSION
For the foregoing reasons, the district court’s judgment dismissing Vannoy is AFFIRMED; the judgments dismissing DuPont and granting summary judgment to Warden Cain are REVERSED and REMANDED for further proceedings consistent herewith, including appointment of counsel for Turner.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. According to Warden Cain himself, “taxes were raised for the following reasons: ... 11% tax is used to rebuild, maintain, or add new [hobby craft facilities,] ... 9% [Feliciana] Parish tax ..., 2-3% taxes [sic] were charged by [c]redit [c]ard [c]ompanies....” The parties do not seem to dispute that these taxes were levied against the seller, not the buyer.

. Although prison regulations presumably prohibit such conduct, neither party asserts that is what actually took place.

. This court granted Turner leave to proceed in forma pauperis and ordered the parties to submit briefs. Neither Dupont nor Vannoy filed appellee briefs, but this does not affect their interests, only their ability to participate in oral argument. Fed R.App. P. 31(c).

. The district court correctly construed Turner’s complaint as containing both official capacity and individual capacity claims against the defendants and dismissed each of the official capacity claims under Rule 12(b). Because Turner now suggests that he only intended to bring individual capacity claims against them, he has waived any challenge to the district court's disposition of his official capacity claims.

. Morris v. Powell, 449 F.3d 682, 684 (5th Cir.2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir.1998)).

. Id. at 684-85.

. Lampton v. Diaz, 639 F.3d 223, 225 (5th Cir.2011).

. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S, 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

. Leal v. McHugh, 731 F.3d 405, 410 (5th Cir.2013) (quoting Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir.2011)).

. Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

. See Morris, 449 F.3d at 685-87.

. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted).

. Morris, 449 F.3d at 687.

. An artide about the Rodeo in Corrections Today explains: "[H]obby shop privileges are highly valued at the prison, which hosts annual events featuring the selling of inmate arts and crafts. These events have been hugely successful and inmate hobby crafters can make significant amounts of revenue from their participation.” Cathy Fontenot, Managing Angola's Long-Term Inmates, Corrections Today 119 (Aug. 2001).

. Fed.R.Civ.P. 56(a).

. Harris v. Serpas, 745 F.3d 767, 771 (5th Cir.2014) (quoting Tubos de Acero de Mexico, S.A. v. Am. Int’l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir.2002)), cert. denied, — U.S. -, 135 S.Ct. 137, 190 L.Ed.2d 45 (2014).

. See Kitchen v. Dallas Cty., Tex., 759 F.3d 468, 476 (5th Cir.2014).

. 369 F.3d 854, 864 (5th Cir.2004).

. The court did not rule on any other issues raised by the parties on summary judgment, and we likewise do not opine on them.

. Turner asserts he did not know he was speaking to the spouse of an LSP official.

. Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); see also Freeman, 369 F.3d at 863.

. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct 2254, 96 L.Ed.2d 64 (1987).

. Watkins v. Kasper, 599 F.3d 791, 796-97 (7th Cir.2010) (alteration in original) (quoting Turner, 482 U.S, at 89-90, 107 S.Ct. 2254).