# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11230

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2019

Lyle W. Cayce
Clerk

MICHAEL JOSEPH DEMARCO, JR.,

Plaintiff–Appellant,

versus

LORIE DAVIS, Director,
  Texas Department of Criminal Justice, Correctional Institutions Division;
JEREMY J. BYNUM, Officer; JOSEPH C. BOYLE, Disciplinary Captain,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, DUNCAN, and ENGELHARDT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Michael DeMarco, Jr., an inmate at the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ"), brought suit under 28 U.S.C. § 1983 against Jeremy Bynum, an officer at the Allred Unit; Joseph Boyle, a disciplinary captain; and William Stephens, the former director of the TDCJ.

No. 17-11230

The district court dismissed the complaint with prejudice under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. We affirm in part and reverse in part and remand.

I.

Bynum allegedly confiscated certain personal property from DeMarco's cell. At a disciplinary proceeding, DeMarco was found guilty of threatening Bynum and was placed in solitary confinement. DeMarco sued, claiming that the seizure of his legal and religious materials had occurred without due process of law, had deprived him of access to the courts, and had burdened his free exercise of religion. He further alleged that Bynum had confiscated his property and instituted the disciplinary action in retaliation for exercising First Amendment rights. Moreover, DeMarco insisted that Stephens and Boyle were deliberately indifferent to those constitutional violations. Finally, DeMarco claimed that Boyle had denied him due process at the disciplinary hearing by tampering with evidence and prohibiting him from calling his own witnesses. The district court severed DeMarco's challenge to the validity of the disciplinary hearing and dismissed the remainder of the complaint for failure to state a claim. *See id.* § 1915A(b)(1).

II.

This court reviews dismissals under § 1915A(b)(1) *de novo*, using the standard applied under Federal Rule of Civil Procedure 12(b)(6). *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016). "Under that standard, a complaint will survive dismissal for failure to state a claim if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

No. 17-11230

reasonable inference that the defendant is liable for the misconduct alleged."[1] "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[2]

## A.

DeMarco avers that he was denied due process at the disciplinary proceeding because Boyle tampered with the witness statements and prevented him from calling witnesses. The district court severed those claims because they were potentially cognizable under 28 U.S.C. § 2254.[3] Because DeMarco does not contest that decision on appeal, he has waived any challenge to it. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (per curiam). He must therefore raise those claims in a habeas corpus petition, not under § 1983.

## B.

DeMarco claims that his personal property was seized without due process. Nevertheless, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch,* 494 U.S. 113, 115 (1990)). Conduct is not "random or unauthorized" if the state "delegated to [the defendants] the power and authority to effect the very deprivation complained of."

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[2] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted) (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005)).

[3] *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90 (1973)) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release.").

No. 17-11230

*Id.* (quoting *Burch,* 494 U.S. at 138).

DeMarco has not alleged that the state delegated to Bynum the authority to confiscate his personal property. Instead, DeMarco contends that his property was seized in violation of TDCJ policy. Additionally, Texas's tort of conversion provides an adequate post-deprivation remedy for prisoners claiming loss of property without due process. *Murphy v. Collins,* 26 F.3d 541, 543–44 (5th Cir. 1994). Accordingly, DeMarco's due process claim is not cognizable under § 1983.

## C.

The district court correctly dismissed DeMarco's claim that he was denied access to the courts. Prisoners have "a constitutionally protected right of access to the courts" that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. *See Brewer v. Wilkinson,* 3 F.3d 816, 820–21 (5th Cir. 1993) (citations omitted). But that right is not without limit. Rather, "it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging [an inmate's] convictions or conditions of confinement.'"[4] To prevail on such a claim, a prisoner must demonstrate that he suffered "actual injury" in that the prison "hindered his efforts" to pursue a nonfrivolous action.[5] A prisoner must therefore describe the predicate claim with sufficient detail to show that it is "arguable" and involves "more than hope." *Christopher v. Harbury,* 536 U.S. 403, 416 (2002).

---

[4] *Johnson v. Rodriguez,* 110 F.3d 299, 310–11 (5th Cir. 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 356 (1996)).

[5] *See Lewis,* 518 U.S. at 349, 351 (holding that the actual-injury requirement "derives ultimately from the doctrine of standing"); *Ruiz v. United States,* 160 F.3d 273, 275 (5th Cir. 1998) (per curiam) (finding that the inmate failed to show actual injury because his underlying claims were frivolous).

No. 17-11230

DeMarco maintains that the confiscation of his legal materials prevented him from filing a timely petition for writ of certiorari. But he has not identified any actionable claim that he would have raised. Consequently, he has failed to establish the actual harm necessary to support his denial-of-access claim.[6]

D.

The district court properly dismissed DeMarco's retaliation claim. Under the First Amendment, a prison official may not harass or retaliate against an inmate "for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[7] Causation, in turn, requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (quoting *Johnson*, 110 F.3d at 310). That standard places a "significant burden" on an inmate as the court must regard claims of retaliation "with skepticism." *Woods*, 60 F.3d at 1166 (citation omitted). Mere conclusional allegations are insufficient to support a retaliation claim. *Id.* Instead, an inmate "must produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (citations omitted).

DeMarco maintains that Bynum retaliated against him by confiscating his personal property and filing a false disciplinary action. In his brief,

---

[6] The district court held that despite the seizure of his legal materials, DeMarco suffered no harm because he was represented by counsel. We may nonetheless affirm on any basis supported by the record. *LLEH, Inc. v. Wichita Cty.*, 289 F.3d 358, 364 (5th Cir. 2002).

[7] *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).

No. 17-11230

DeMarco states that the retaliation was motivated by the submission of an earlier grievance on June 10, 2013. But in his answers to the district court's questionnaire, DeMarco maintained that he had filed the relevant grievance on May 27, 2013. He also alleged that the retaliation occurred because he had offered to serve as a witness against Bynum in 2012. This changing tale is conclusional at best. Because DeMarco has not demonstrated retaliatory intent through direct evidence or a clear chronology of events, he has failed to establish the second and fourth elements of his retaliation claim. *See McDonald*, 132 F.3d at 231.

E.

DeMarco posits that Bynum burdened the free exercise of religion by confiscating his religious materials. To fall within the purview of the Free Exercise Clause, a claimant must possess a sincere religious belief.[8] An inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). In evaluating the reasonableness of a prison policy, we consider (1) the existence of a "valid, rational connection" between the state action and the "legitimate governmental interest put forward to justify it;" (2) the availability of alternative means of exercising the right; (3) the impact an accommodation will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of alternatives that "fully accommodate[] the prisoner's right[] at *de minimis* cost to valid

---

[8] *See Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972) (noting that "philosophical and personal . . . belief does not rise to the demands of the Religion Clauses"); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1212 (5th Cir. 1991), *on reh'g*, 959 F.2d 1283 (5th Cir. 1992) (citation omitted) ("[T]he Free Exercise query is whether *this particular plaintiff* holds a sincere belief that the affirmation is religious."); *Ferguson v. Comm'r*, 921 F.2d 588, 589 (5th Cir. 1991) (per curiam) (citations omitted) ("The protection of the free exercise clause extends to all sincere religious beliefs.").

penological interests."[9]

A plaintiff bears the burden of proving that a prison policy, as applied, is not reasonably related to legitimate penological objectives.[10] Moreover, prison officials are entitled to "substantial deference" in the exercise of their professional judgment. *See Overton*, 539 U.S. at 132 (citations omitted). Nevertheless, the government "must do more . . . than merely show 'a formalistic logical connection between [its policy] and a penological objective.'" *Prison Legal News*, 683 F.3d at 215 (quoting *Beard v. Banks,* 548 U.S. 521, 535 (2006)). Though a plaintiff shoulders the ultimate burden of persuasion,[11] the government must identify "'a *reasonable* relation,' in light of the 'importance of the rights [here] at issue.'"[12]

In dismissing DeMarco's claim, the district court explained that he had failed to name any religious belief or practice that was negatively impacted. The court suggested that because DeMarco had not requested the return of his religious materials, his professed faith was likely a sham. We disagree. Though DeMarco did not specify that he was a Christian, he averred that

---

[9] *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (citations omitted). *See also Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016).

[10] *See Prison Legal News v. Livingston*, 683 F.3d 201, 215 (5th Cir. 2012); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

[11] *See Turner v. Cain*, 647 F. App'x 357, 366–68 (5th Cir. 2016) (Wiener, J., concurring).

[12] *Prison Legal News*, 683 F.3d at 215 (quoting *Beard,* 548 U.S. at 535); *see also Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 612 (5th Cir. 2008) (reversing the district court's grant of summary judgment in favor of the TDCJ because "none of the penological interests provided by the TDCJ necessarily support[ed] limiting access to rune literature in the prison library"); *Thompson v. Solomon*, No. 92-8240, 1993 WL 209926, at *2 (5th Cir. June 2, 1993) (per curiam) (concluding that the state's "cursory response . . . provide[d] an insufficient factual basis" to dismiss plaintiff's free-exercise claim); *Rudolph v. Locke*, 594 F.2d 1076, 1077 (5th Cir. 1979) (per curiam) (holding that the state's "bare assertion" that its regulation was an appropriate means of maintaining security was "not enough" to deny relief on plaintiff's First Amendment claims).

Bynum had confiscated copies of the Bible and religious books by Max Lucado, Charles Swindoll, and Joel Osteen. Moreover, DeMarco asserted that the taking of those books had placed a substantial burden on his practice of reading religious literature. His decision to seek damages—rather than the return of his books—does not indicate that his religious belief is disingenuous. Indeed, his books were allegedly destroyed, leaving damages as his only recourse. Hence, with the benefit of liberal construction, DeMarco's *pro se* pleadings establish that the seizure of his books burdened a sincere religious practice. *See Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010).

Furthermore, the defendants have not "put forward" any legitimate government interest justifying the alleged seizure of DeMarco's religious materials. *Turner*, 482 U.S. at 89. Rather, as DeMarco alleges, Bynum merely stated that "he could take whatever he wanted whenever he wanted." The district court therefore erred in dismissing DeMarco's free exercise claim against Bynum in his individual capacity.[13] On remand, the court should determine whether the alleged confiscation was reasonably related to a legitimate penological objective.

Nevertheless, the district court properly dismissed DeMarco's free exercise claim against Boyle and Stephens. "[T]o state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[14] DeMarco does not aver that Boyle or

---

[13] DeMarco's claim against Bynum in his official capacity is barred by sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.").

[14] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

Stephens personally confiscated his religious materials. Instead, he claims that they caused the violation by failing to train their subordinates and by ignoring previous complaints about Bynum. But DeMarco does not specify any other examples of comparable violations. Nor does he explain how better training might have prevented the alleged violation. Such conclusional allegations are insufficient to show that the alleged violation resulted from Boyle and Stephens' actions. DeMarco has thus failed to state a claim against them.

The judgment of dismissal is AFFIRMED in part and REVERSED in part and REMANDED. We place no limitation on the matters that the district court can address on remand, and we do not mean to indicate how the court should rule on any issue.