# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2022

Lyle W. Cayce
Clerk

No. 20-11047

---

Michael Joseph DeMarco, Jr.,

*Plaintiff—Appellant*,

*versus*

Jeremy J. Bynum, *Officer*,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:14-CV-94

---

Before Clement, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:

Michael Joseph DeMarco, Jr., Texas prisoner # 1564162, appeals the summary judgment dismissal of his 42 U.S.C. § 1983 claim that Jeremy Bynum, a correctional officer at the Allred Unit of the Texas Department of Criminal Justice (TDCJ), confiscated DeMarco's religious materials in violation of the Free Exercise Clause of the First Amendment. We affirm.

## I.

In August 2014, DeMarco filed this § 1983 action against Bynum and other defendants. The district court dismissed the action for failure to state

a cognizable claim.  DeMarco appealed, and this court affirmed in part, reversed in part, and remanded. *DeMarco v. Davis*, 914 F.3d 383, 386–90 (5th Cir.) (affirming dismissal of all defendants and claims save the free exercise claim against Bynum), *cert. denied*, 140 S. Ct. 250 (2019).  Following remand, Bynum moved for summary judgment.  He contended that TDCJ Administrative Directive (AD) 03.72 and his confiscation of DeMarco's religious materials pursuant to that policy were reasonably related to a legitimate penological objective, namely, maintenance of prison security based on Bynum's belief that the confiscated materials could be used in the trafficking or possession of contraband.  Bynum also contended that he was entitled to qualified immunity.  The district court agreed with Bynum on both points and granted summary judgment.  DeMarco filed a timely notice of appeal.

## II.

We review a district court's grant of summary judgment de novo, applying "the same standard as that employed by the district court." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  That is, we affirm "if the movant shows that there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)).

## III.

On appeal, DeMarco attempts to raise several issues.[1]  But only one issue was remanded to the district court for consideration:  whether Bynum's

---

[1] For example, DeMarco argues that the confiscated materials were not altered and that TDCJ failed to follow protocols regarding storage of confiscated materials and chain of custody, as well as procedures regarding disciplinary hearings.  These arguments are immaterial to this appeal.  Whether the materials were altered is inconsequential because

No. 20-11047

confiscation of DeMarco's materials violated DeMarco's constitutional rights under the Free Exercise Clause, i.e., "whether the alleged confiscation was reasonably related to a legitimate penological objective." *See DeMarco*, 914 F.3d at 389–90.  The district court's ultimate ruling on this issue rested on two key grounds that are supported by the record and the law:  DeMarco's property was improperly stored per AD-03.72, and AD-03.72 is reasonably related to a legitimate penological goal of prison safety.  Summary judgment was thus proper.

As stated in our prior opinion in this case, "[a]n inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns."  *Id.* at 388–89.  When evaluating the reasonableness of a prison's policy, we consider  (1) whether there is a "valid, rational connection" between the regulation and the government interest; (2) whether there are alternative means of exercising the rights that remain open to prisoners; (3) the impact that accommodation of the asserted constitutional rights would have on other prisoners, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate a prisoner's rights at de minimis cost to valid penological interests.  *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (citation omitted).  "[P]rison officials are entitled to 'substantial deference' in the exercise of their professional judgment," and it is an inmate's burden to prove "that a prison policy, as applied, is not reasonably related to legitimate penological objectives."  *DeMarco*, 914 F.3d at 389.

---

DeMarco concedes that the materials were not properly stored.  Further, the district court previously severed DeMarco's claim that he was denied due process at his disciplinary hearing; that claim is thus a separate cause of action not part of this appeal.  *See DeMarco*, 914 F.3d at 387 & n.3.

AD-03.72 concerns the possession of inmate property. Section V ("In-Cell Storage Requirements") provides that when an inmate is not in his cell, his property—with some exceptions not relevant here—must be stored in a container with a storage capacity of 1.75–2.0 cubic feet. Section VIII ("Confiscation of Offender Personal Property") states that the inmate's "personal property may be confiscated at any time, from any location, for the reasons indicated in [Section VIII], and any other appropriately documented circumstances as necessary to ensure safety and security." One such reason is improper storage of property. The policy also defines non-dangerous contraband as "authorized property which has been altered, damaged, . . . or is out of place," and states that this type of contraband "[r]epresents a threat to the management of the unit" and "violates TDCJ rules."

DeMarco concedes that he did not store his religious materials as required by AD-03.72. And this court has previously indicated that TDCJ policies regarding storage of personal property do not infringe on a prisoner's right to free exercise of religion. *See Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990) (addressing AD-03.72 and suggesting, albeit in dicta, that prison officials may impose reasonable restrictions on the amount and type of personal property inmates can possess without violating prisoners' constitutional rights); *see also Carrio v. Tex. Dep't of Crim. Just., Inst. Div.*, 196 F. App'x 266, 268 (5th Cir. 2006) (stating prisoner's "claimed denial of his First Amendment right to free exercise of his religion when prison officials enforced a new prison storage policy was . . . properly dismissed because the storage policy [was] reasonably related to legitimate penological interests" (citing *Safley*, 482 U.S. at 89)). We now confirm that to be the case.

Evaluating AD-03.72 in view of the considerations outlined in *Safley*, 482 U.S. at 89–91, Bynum's confiscation of DeMarco's religious materials was reasonably related to a legitimate penological objective. First, there is a

"valid, rational connection" between AD-03.72 and TDCJ's interest in prison safety and management, insofar as the policy is aimed at reducing the access of others to an inmate's personal property and preventing the trafficking of contraband. *See Safley*, 482 U.S. at 89 (citation omitted). There is also an alternative way for DeMarco to exercise his First Amendment rights, by accessing religious reading materials through the prison chaplain. The impact of accommodating DeMarco's constitutional rights on other prisoners, guards, and prison resources could be great, given the management and safety concerns underlying the policy. *See id.* at 90 (noting that "[i]n the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order"). Finally, DeMarco has not "point[ed] to an alternative that fully accommodates [his] rights at de minimis cost to valid penological interests." *Id.* at 91. For these reasons, the district court did not err by concluding that DeMarco failed to demonstrate a violation of his First Amendment rights based on Bynum's confiscation of his improperly stored religious materials pursuant to AD-03.72.

Moreover, even if Bynum had violated DeMarco's constitutional rights, the district court correctly found that Bynum was entitled to qualified immunity because his actions were objectively reasonable. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). But "[a]n official that violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable." *Id.* Bynum contends that he seized the materials because inmates can use unsecured items for trafficking and contraband purposes; this position is supported by

No. 20-11047

evidence in the record as well as the law referenced above.  DeMarco, who has the burden to rebut the qualified immunity defense, *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020), does not meaningfully do so.

AFFIRMED.