# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2024

Lyle W. Cayce
Clerk

————————

No. 22-40809

————————

Shawn J. Gieswein,

*Plaintiff—Appellant*,

*versus*

Salmonson, *Warden, FCI Texarkana*; Wolfe, *Assistant Warden, FCI Texarkana*; Colette S. Peters, *Director of Bureau of Prisons*; Grand Prairie Regional Director; United States of America,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:20-CV-51

———————————————————————

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Shawn Gieswein, federal prisoner #16635-064, appeals the district court's dismissal of his pro se suit for failure to state a claim. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40809

I

In April 2020, Gieswein sued his warden and other prison officials for various claims related to COVID-19 on behalf of himself and purportedly on behalf of "all non-violent prisoners in FCI Low Texarkana, Texas." The class was never certified. Gieswein's complaint alleged that on March 29, 2020, Attorney General William Barr ordered the Bureau of Prisons (BOP) to release nonviolent, at-risk prisoners to home confinement in response to COVID-19. Gieswein alleged that the BOP failed to release any prisoners under this order, even though release to home confinement was necessary to prevent the spread of the virus due to his prison's conditions. Gieswein alleged that the prison was overcrowded without space to social distance, the inmates lacked proper cleaning supplies, and some guards did not wear face masks. Gieswein also alleged that under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), (c)(1), 134 Stat. 281, 516 (2020), the BOP was required to provide free phone calls and video teleconferencing, but neither were provided in his prison.

Gieswein sought release for himself and all eligible prisoners as well as $1 million "each day that Defendants refuse to release Plaintiffs and deny them access to free phone calls and teleconferencing," $50,000,000 for pain and suffering if a plaintiff contracted COVID-19, and $250,000,000 to be paid to the plaintiff's family if a plaintiff died from COVID-19.

A magistrate judge screened Gieswein's complaint as required by 28 U.S.C. § 1915A. The magistrate judge recommended that Gieswein's complaint be dismissed for failure to state a claim because (1) the Attorney General's memorandum did not order the release of prisoners, but instead created a process by which inmates could seek compassionate release; (2) Gieswein's claim for monetary damages was speculative given that his claim was based on the possibility that he or other inmates *might* contract

COVID-19 in the future; and (3) prisoners have no constitutional right to free telephone calls.

Gieswein objected to the magistrate judge's report and recommendation. His objections reiterated that the BOP refused to transfer eligible prisoners to home confinement as the Attorney General allegedly ordered and that his prison did not provide free phone calls or video teleconferencing as required by the CARES Act. Gieswein objected to the magistrate judge's interpretation of the CARES Act and Attorney General's memorandum. He also alleged the following new facts: the prison had been locked down since March 2020 because of two COVID-19 outbreaks; because the prison had been locked down for 18 months, he had "little or no access to outside exercise, fresh air, and sunlight," gained 35 pounds, and has suffered mentally and physically; and the BOP failed to protect the inmates because 98% of the inmate population contracted COVID-19 at least once, he contracted COVID-19 and was seriously ill, and two inmates died. He argued that he and the other eligible inmates should receive monetary compensation and extra good-time credit.

In December 2022, after considering Gieswein's objections and new allegations, the district court adopted the magistrate judge's report and recommendation in full and dismissed the case without prejudice for failure to state a claim. Gieswein appealed.

II

We review a district court's dismissal of a civil rights complaint under 28 U.S.C. § 1915A(b)(1) de novo, applying the same standard we apply to Federal Rule of Civil Procedure 12(b)(6). *DeMarco v. Davis*, 914 F.3d 383, 386 (5th Cir. 2019). "Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim . . . without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)

(per curiam). This opportunity typically takes the form of (1) a hearing under *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), or (2) a questionnaire that brings into focus the bases for the prisoner's claims. *See Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023) (collecting cases). But the district court does not err if the dismissal was without prejudice, or the plaintiff had alleged his best case. *Bazrowx*, 136 F.3d at 1054–55; *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020).

Here, the district court dismissed Gieswein's claims without prejudice, but the dismissal was effectively with prejudice because the statute of limitations on Gieswein's claims had run. *See Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996); *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021) (per curiam) ("In Texas, *Bivens* actions are limited by a two-year statute of limitations."). So we "must determine whether [Gieswein's] allegations, if developed by a questionnaire or in a *Spears* dialog, might have presented" a viable civil rights claim. *See Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994). Denial of leave to amend is reviewed for abuse of discretion. *Crostley v. Lamar County*, 717 F.3d 410, 420 (5th Cir. 2013).

## III

Liberally construing Gieswein's pro se brief, *United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) (per curiam), he raises two issues: (1) he was entitled to release to home confinement and free phone calls under the CARES Act and the Attorney General's memorandum; and (2) the warden violated his Eighth Amendment rights by failing to use his authority under the CARES Act to release Gieswein to home confinement and by failing to provide free phone calls and video teleconferencing. We assume without

No. 22-40809

deciding that a *Bivens* remedy exists for Gieswein's claims. *Petzold v. Rostollan*, 946 F.3d 242, 248 & n.21 (5th Cir. 2019).[1]

A

First, we address Gieswein's claims that he is entitled to release to home confinement, free phone calls, and video teleconferencing under the CARES Act and the Attorney General's memorandum. The district court properly dismissed these claims.

As the district court noted, the Attorney General's memorandum did not order all eligible prisoners to be released to home confinement. Rather, the memorandum instructed the Director of the Bureau of Prisons to "prioritize the use of . . . various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Memorandum from the Attorney General on Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic to Director of Bureau of Prisons (Mar. 26, 2020). The memorandum instructed the Director to "consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement," and a list of "discretionary factors." *Id.*; *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 740 (5th Cir. 2020) (per curiam) (addressing the Attorney General's memorandum).

Nor does the CARES Act mandate Gieswein's transfer to home confinement. The CARES Act expanded the Director's authority under 18 U.S.C. § 3624(c)(2) to permit the release of prisoners to home confinement

---

[1] As the Supreme Court has reiterated, expanding *Bivens* causes of action beyond the three situations it has previously recognized is "a 'disfavored' judicial activity." *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).

for longer than previously allowed. CARES Act, § 12003(b)(2), 134 Stat. at 516. As we have explained, the Act granted "the BOP and the Attorney General . . . the *discretion* to consider the appropriateness of home release based on certain statutory and discretionary factors." *Cheek*, 835 F. App'x at 740 (emphasis added). But "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release." *Id.* Gieswein "cites no legal authority, nor are we aware of any, holding that the CARES Act created an actionable right to release even for qualifying inmates or a corresponding duty of the respondents to release him." *De La Cruz Jimenez v. United States*, 844 F. App'x 753, 754 (5th Cir. 2021) (per curiam).

Similarly, the CARES Act does not require facilities to provide free video teleconferencing or telephone calls. Rather, it required the BOP's director to "promulgate rules" regarding the use of free video teleconferencing and phone calls during the pandemic. CARES Act, § 12003(a)(2), (c)(1), 134 Stat. at 516. Gieswein does not allege that the Director failed to promulgate those rules.

So to the extent that Gieswein contends that he stated viable claims under the CARES Act or is entitled to relief based on the Attorney General's memorandum, the district court properly dismissed those claims.

B

We next address Gieswein's claims related to the prison's conditions, which we liberally construe as an Eighth Amendment claim.

"The Supreme Court has held that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020) (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). To establish an Eighth Amendment violation based on prison

conditions, the "prison conditions must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Dockery v. Cain*, 7 F.4th 375, 378 (5th Cir. 2021) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference is an extremely high standard to meet" and is not met by a showing of negligence. *Torres*, 972 F.3d at 663 (citation omitted). Rather, the plaintiff must demonstrate that officials knew of a substantial risk of serious bodily harm and disregarded that risk by failing to take reasonable measures to mitigate it. *Id.*

Gieswein argues on appeal that the warden acted with deliberate indifference because (1) he failed to provide free phone calls or any video teleconferencing; and (2) he did not use his authority under the CARES Act to release eligible inmates to home confinement and thus did not take reasonable measures to reduce the risk of harm from COVID-19 to inmates. Neither is a plausible Eighth Amendment claim.

The warden's alleged failure to provide free phone calls and video teleconferencing does not rise to the level of an Eighth Amendment violation. There is " no constitutional right to visitation privileges." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). "[R]estrictions on . . . visiting privileges . . . [do] not rise to the level of an Eighth Amendment violation." *LaVergne v. Stutes*, 82 F.4th 433, 437 (5th Cir. 2023). This is because visitation privileges "are a matter subject to the discretion of prison officials." *Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985) (citation omitted). And as explained above, Gieswein points to no authority that requires *free* phone calls or video teleconferencing. Nor does he allege that he was not allowed to use the phone *at all*. The temporary withdrawal of visitation does not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve

the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).

Gieswein also fails to state an Eighth Amendment claim based on the warden's alleged failure to take reasonable measures to reduce the risk from COVID-19 by releasing inmates to home confinement. "The 'incidence of diseases or infections, standing alone,' do[es] not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.' Instead, the plaintiff must show a denial of 'basic human needs.'" *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (per curiam) (quoting *Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009)). Although we have said that "[t]here is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates," Gieswein did not allege that the defendants were deliberately indifferent to that risk. *See id.* at 801–02. On the contrary, his appellate brief indicates that his facility took affirmative steps to mitigate the risk from COVID-19. For example, he contends that inmates were tested for the virus, positive inmates were quarantined in a specific unit, and inmates were provided masks. These measures preclude a finding of deliberate indifference. *See Valentine*, 956 F.3d at 801; *Torres*, 972 F.3d at 663 ("Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." (citation omitted)). And as we explained, the BOP's home confinement authority during the pandemic was discretionary, and Gieswein has no constitutional right to home confinement. Moreover, Gieswein does not give us any "indication that he did not plead his best case in his complaint . . . . He does not state any material facts he would have included in an amended complaint" that might support an Eighth Amendment claim. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). As noted, the district court considered Gieswein's new factual allegations in his objections to the

No. 22-40809

magistrate judge's recommendation, essentially treating them as an amendment to his complaint.

We thus conclude that Gieswein has pleaded his best case, and the district court's judgment is AFFIRMED.